(84 Misc. Rep. 488)

### WOODCOCK v. SARTLE et al.

(Supreme Court, Trial Term, Niagara County. March 14, 1914.)

MASTER AND SERVANT (§ 318*)—LIABILITY FOR INJURIES TO THIRD PERSONS—WORK OF INDEPENDENT CONTRACTOR.

    Where the owner of an automobile contracted with an experienced mechanic to overhaul or repair it, agreeing to pay him at the rate of $20 per week for the time expended, and reserving no right to control or direct him as to the work, the mechanic was an independent contractor, and not a servant, and hence the owner was not liable for an injury to a third party caused by the negligence of the mechanic while testing the car.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1257, 1258; Dec. Dig. § 318.*]

Action for personal injury by Charles W. Woodcock against John M. Sartle and Russell G. Smith. Verdict for plaintiff against both defendants, which, on motion for nonsuit, was set aside as to defendant Sartle, and allowed to stand as to defendant Smith.

Parker & Stewart, of Niagara Falls, for plaintiff.
Payne & Lindsay, of Tonawanda, for defendant Sartle.

WHEELER, J. This action is to recover for personal injuries, and for damages to horse and wagon, sustained in a collision with an automobile owned by the defendant Sartle, and operated by the defendant Smith.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The question now before the court is that of the liability of the
defendant Sartle for the consequences of the accident. This turns
upon the question whether, upon the circumstances of the case as
hereinafter stated, the defendant Smith is to be deemed an employé
of the codefendant Sartle, or an independent contractor.

The essential facts bearing on the question stated are these: Mr.
Sartle lived at North Tonawanda, and was the owner of a Thomas
touring car, which had been in use for a couple of years, and was in
need of overhauling and repair. The defendant Smith was an ex-
perienced mechanic, had been for years employed by the Thomas Mo-
tor Car Company (the manufacturer of the car) as a "tester" and as
"trouble man"; that is, he tested new cars made by the company be-
fore placed on the market, and when cars sold failed to properly oper-
ate, Smith was the man, or one of the men, sent out to correct the
trouble. Work at the factory was slack, and the car company sent
Smith to Sartle, saying to him he might obtain a job. Smith went to
Sartle at his residence at North Tonawanda, where the automobile in
question was. He and Sartle had a talk. Sartle explained he wished
his car overhauled, and put in good running order. Smith stated he
could do the work on the premises. Smith stated he would do the
necessary work, and charge for his services $20 a week for the time
required to do the work, or at the rate of $20 per week. Sartle told
Smith to go ahead and put the machine in shape. He also told Smith
that if new parts were needed, to order them, and charge them to him.
Sartle did not know what repairs were needed. He was not a me-
chanic, and left what repairs were to be made, and how they were to
be made, entirely to the judgment of Smith. He gave no directions
whatever to Smith during the progress of the work. After Smith
had been at work on the "auto" for about two weeks, the repairs had
so far progressed that he thought the time had come for a test. He
according took out the machine to run on the road. He went from
Tonawanda to Buffalo, there purchased some trifling needed parts,
returned to Tonawanda, got his luncheon, and then with four friends
and acquaintances started for Lewiston, with a view of further test-
ing out the machine in climbing the Lewiston Hill, which is a favorite
testing ground for automobilists. After reaching Lewiston, and mak-
ing a short stay there, the party started to return, and on the way
back, after having climbed the Lewiston Hill, in passing the plaintiff
and his horses and wagon, collided with him, with a wagon just ahead
of the plaintiff, and with another wagon on the opposite side of the
highway. This resulted in personal injuries to the plaintiff, in so in-
juring one of his horses as to necessitate its being shot, in smashing
his wagon, in killing one of the occupants of the car, and breaking the
leg of the man on one of the other wagons. It is claimed these all
resulted from the negligence of the defendant Smith, and that his neg-
ligence is legally attributable to the defendant Sartle as principal.
Sartle on the day of the accident was absent in Virginia, gave no di-
rections that the machine should be tested, and did not know it was to
be taken out. The facts stated are all beyond controversy. At the
close of the plaintiff's case, counsel for the defendant Sartle moved

for a nonsuit, and for a direction of a verdict in his favor. At the close of the defendants' case the motion was renewed. The disposition of these motions was reserved by the court, and the case submitted to the jury, who were asked to render a verdict subject to the opinion of the court, as provided by section 1187 of the Code of Civil Procedure.

The following questions were submitted to the jury under proper instructions: First, whether Smith was negligent in the operation of the car; second, whether, on the day in question, Smith was, in good faith, engaged in testing the car, or taking a "joy ride" for the pleasure of himself and of his companions; third, whether the plaintiff was free from contributory negligence. The jury ordered a verdict against both defendants, resolving the questions presented in favor of the plaintiff. Counsel for Sartle thereupon again asked for the nonsuit and dismissal of the complaint upon the questions reserved, and also moved, if such motion is not granted, for a new trial on all the grounds specified in section 999 of the Code. The question, therefore, before the court is that of the liability of the defendant Sartle.

We have reached the conclusion, after a careful consideration of the facts and authorities, that the defendant Sartle cannot be held liable for the negligence of Smith, and this upon the theory that Smith did not become an employé, but was an independent contractor engaged in repairing Sartle's automobile.

It was held in the case of Hexamer v. Webb, 101 N. Y. 377, 4 N. E. 755, 54 Am. Rep. 703, that where a person is employed to perform certain work which requires the exercise of skill and judgment as a mechanic, the execution of which is left entirely to his discretion, with no restriction as to its exercise, and no limitation of the authority conferred in respect to the same, and no provision is especially made as to the time in which the work is to be done, such person does not occupy the relation of a servant under the control of the master.

The fact that the work to be done was such as required special skill for its proper performance is frequently referred to in cases where the contract has been held to be independent. Lawrence v. Shipman, 39 Conn. 586; Morgan v. Bowman, 22 Mo. 538; Parker v. Seasongood (C. C.) 152 Fed. 583. In the Connecticut case the rule was applied to a mason, in the Missouri case to a roof repairer, and in the federal case cited, to a trained nurse, and in Hexamer v. Webb, to one engaged in the roofing and cornice business.

In Kueckel v. Ryder, 54 App. Div. 252, 66 N. Y. Supp. 522, affirmed in 170 N. Y. 562, 62 N. E. 1096, where merchants employed a truckman to move bundles of paper from one floor of a building to another, and in the work a bundle was dropped carelessly and a person injured, the court held the truckman an independent contractor, citing the case of Hexamer v. Webb, 101 N. Y. 383, 4 N. E. 755, 54 Am. Rep. 703, as authority for the decision.

It has been said that:

"Where one who contracts to perform a lawful service for another is independent of his employer in all that pertains to the execution of the work, and is subordinate only in effecting a result in accordance with the employ--

er's design, he is an 'independent contractor'; and in such case the contractor alone, and not the employer, is liable for damages caused by the contractor's negligence in the execution of the work." Smith v. Simmons, 103 Pa. 32, 49 Am. Rep. 113.

See, also, De Forrest v. Wright, 2 Mich. 368; Harrison v. Collins, 86 Pa. 153, 27 Am. Rep. 699.

In Blake v. Ferris, 5 N. Y. 48, 55 Am. Dec. 304, will be found an illuminating opinion, discussing many English cases, and holding in substance to the rule of law above expressed. A full and elaborate discussion of the rule and of many cases in various states is also to be found in a note to the case of the Central Coal & Iron Co. v. Grider's Administrator, reported in 115 Ky. 745, 74 S. W. 1058, 65 L. R. A. 455.

It only remains to make the application of the rule to the facts in this case. Sartle in fact reserved no right to control or direct Smith in repairing the car to be overhauled. He neither had the knowledge or experience necessary to do so. He, in fact, did not assume to direct what should be done, or how it should be done. He was only interested in the result to be accomplished. He relied upon, and trusted entirely to, the mechanical skill and experience of Smith, who undertook the job. The fact that the work was done on Sartle's premises does not change the legal relations between the parties. Had Smith had a shop of his own, and had he taken the automobile there to do the work, his duties would have been precisely the same. Nor does the fact that he was to be paid at an agreed compensation of $20 per week, or at the rate of $20 per week, alter the relations. It is a circumstance to be considered, but cannot control. If the "auto" had been sent to a factory, the cost of the necessary repairs might have been either for a lump sum, or if the time and extent of the repairs could not be definitely foreseen, the parties could agree that the cost be ascertained on the basis of the time necessarily expended, plus the cost of the required new parts. This was, in substance, just what the arrangement was between Sartle and Smith; all necessary parts to be charged to Sartle, and the time expended to be paid for at the rate of so much per week.

After a most careful consideration of this case, I have therefore reached the conclusion that Sartle is not liable for the consequences of Smith's negligence; that the nonsuit asked for as to him should be granted, and the complaint dismissed; the verdict as to Smith to stand.

So ordered.