## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### JOHN E. COSTAN V. DOWNING L. SMITH.

November 12, 1925.

1. MASTER AND SERVANT—*Questions of Law and Fact—Relationship as a Matter of Law.*—Where the question at issue is whether one is a servant of another or an independent contractor, if there is no conflict of evidence as to the relationship, the relationship becomes a matter of law.

2. MASTER AND SERVANT—*Independent Contractor—Dealer in Automobiles who Sells Automobile with Guarantee to Keep it in Repair for a Certain Time—Case at Bar.*—The instant case was an action for personal injuries by plaintiff against a dealer in automobiles and a purchaser of a car from the dealer. Under the contract of sale and as a part of that contract, the dealer agreed to keep the car in order and to make such adjustments and repairs as were necessary for this purpose for ninety days. In pursuance of this contract the dealer took the car out to make certain adjustments in the carburetor, and while driving the car for this purpose an accident occurred by which plaintiff was injured. The guarantee was by the dealer alone and not by the manufacturer of the car. The dealer had no fixed place of business.

   *Held:* That the relationship between the dealer and the purchaser of the car was not that of master and servant at the time of the accident, but that the dealer was an independent contractor, for whose negligence the purchaser was not liable.

Error to a judgment of the Circuit Court of Albemarle county, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Duke, Duke & Gentry,* for the plaintiff in error.

*Perkins, Walker & Battle,* for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

This is an action for damages for personal injury, in which Downing L. Smith was plaintiff and John E. Costan and W. C. Evans were defendants.

The jury found a verdict of $7,500 in favor of the plaintiff against the defendants jointly, upon which the court rendered judgment. The defendant, John E. Costan, applied for and obtained a writ of error, which brings into question the correctness of this judgment as to him.

Costan is a restaurant keeper in the city of Charlottesville. Evans is a dealer in automobiles, representing the Jordan Agency at Charlottesville. As such agent he sold Costan a Jordan car under a ninety day guarantee to keep the car in order for that period from the date of sale. During the ninety day period, Costan complained to Evans that he was having some trouble with the car, and he asked Evans to fix it. He gave Evans the key to his garage and told him to take the car out and fix it. Evans took the car out for this purpose, and while trying it out on the road ran into and seriously injured the defendant in error, Downing L. Smith.

There is no use in discussing the details of the accident. The jury found that Evans was negligent; there is ample evidence to support the verdict, and so far as Evans is concerned they were not misdirected as to the law by the court.

The question presented here for decision is whether Costan is also liable in damages, and the solution of this question depends upon whether Evans was, as to the transaction above narrated, the servant of Costan, engaged in the performance of his duties to his master under direction, authority and control of the latter,

or whether he was an independent contractor, engaged in independent employment, the manner of the execution of which was entirely under his control and subject to his discretion.

The trial court took the view that, under testimony in the case (and there is no material conflict in the evidence), Evans was the servant of Costan, and in effect so instructed the jury, by defining the relationship of master and servant, instructing them as to the liability of the master for the negligent and tortuous acts of the servant, and by refusing to give the following instruction tendered in behalf of the defendant, Costan:

"If the jury believe from the evidence in this case that the defendant, John Costan, purchased the car which caused the injury from W. C. Evans, as a dealer, under his warranty to keep said car in good order for a period of ninety days, and if they further believe that during said period of ninety days and while said warranty was in force and in pursuance thereof, said W. C. Evans, at said Costan's request, took said car for adjustment, and while having the car in his possession and driving it, caused the injury complained of, said Evans was not the servant or agent of said Costan and said Costan is not liable for the injury."

The action of the court in refusing to give this instruction, and in overruling the motion of the defendant, Costan, to set aside the verdict as contrary to the law and the evidence, are the grounds of error relied on for reversal of the judgment complained of, as to Costan.

[1] These two grounds of error raise one and the same question, viz., was Evans, under the evidence in this case, the servant of Costan, or, while engaged in the adjustment or repair of the automobile, was he

engaged in independent employment? If the former, the court properly instructed the jury; if the latter, the instructions given relating to master and servant should have been rejected and the instruction above quoted, which correctly propounds the law relative to independent employment in this case, should have been given, since there is no conflict of evidence as to the relationship of Costan and Evans in this transaction, and in such case their relationship becomes a matter of law.

The evidence upon this point is brief, and because of its far-reaching importance is quoted in full.

W. C. Evans, joint defendant with Costan, testified:

"I live in Charlottesville, Virginia, and am a dealer in Jordan cars. On the morning of the day when Mr. Smith was injured, I was in John Costan's restaurant at breakfast, and Costan came up to me and said that his car would not pull a hill properly, and he thought the carburetor was out of order. He gave me the key to his car and asked me to take the car out and adjust the carburetor. A little later I got the car out and drove it through Charlottesville and over the free bridge to where the accident occurred.

"I do not have a license because it was decided that one not having a regular fixed place of business is not required to pay any license. I sold the Jordan car here. I sold Mr. Costan this car (meaning the car he drove when the accident occurred) two or three weeks before the accident occurred. I sold this car to Mr. Costan under the usual ninety day guarantee that practically all of the companies make. The guarantee was not in writing, but I gave it to Mr. Costan verbally and undertook to carry it out. By it, I undertook to keep the car in order for ninety days. The adjustment was done by me as representing my car under my guaran-

tee, and it was done for Costan under my representation and I was not paid for it by Costan. I did it under my guarantee which I gave Costan when I sold to him.

"John Costan knew I had the car; that I was running it to adjust the carburetor for him and I took it at his request. I had no fixed place of business in which to repair the car. I purchased the Jordan car involved in this accident and took title to it in my name. The Jordan Motor Company had no interest in the car at the time of the sale to Costan nor at the time of the accident."

Costan testified: "I live in Charlottesville; have lived here for about twelve years. I am a naturalized American citizen. I bought the car from Mr. Evans representing the Jordan people. I bought the car under what I understood was the company's guarantee for service for ninety days. Mr. Evans made the contract with me and he gave me this guarantee. It was not in writing, but he undertook to keep the car in good order for ninety days. I had had some trouble with the car and asked Mr. Evans to adjust it. He came down to the restaurant and I told him about it and gave him my key to the garage and I didn't know what he did and where he went. The next I heard of it was when I heard the accident had happened.

"I knew Evans had no shop and would have to fix the car on the street or road. I also knew that he had no one working for him when I gave him the key and told him to take the car out, I knew he was going to drive it."

J. L. Cochran said he talked with Costan and Evans at the scene of the accident, and that Costan told him Evans was making adjustments to the carburetor for him.

Sheriff J. Mason Smith said he saw Costan at his

place of business after the accident and Costan told him he had given Evans the key to the car and had told Evans to take the car out and adjust the carburetor, as the car was not pulling properly.

[2] From all the foregoing, it is apparent that under the contract of sale, and as a part of that contract, Evans agreed to keep the car in order and to make such adjustments and repairs as were necessary for this purpose for ninety days from the date of sale; that it was in pursuance of this contract that Evans took the car to make the necessary adjustments to put it in order. It is immaterial whether the ninety day guarantee was made by the Jordan Company or by Evans, so far as Costan's liability in this case is concerned.

There is nothing in this relationship to suggest that of master and servant. On the contrary, Evans represented the will of the owner, Costan, only as to the result of his work. The means by which he accomplished it was left entirely to his own discretion. The fact that Evans has no place of business does not alter the situation, nor does the fact that Costan knew Evans would take the car out and drive it. In the adjustment of the carburetor it is impossible to ascertain whether the adjustment has been properly made without such a test. Under the circumstances of the instant case there is no material distinction between the facts here and a case where one leaves an automobile at a garage to have it repaired.

In *Thom* v. *Clark*, 188 App. Div. 411, 177 N. Y. Supp. 201, it is said: "It is a most common occurrence for the owner of an automobile to have it repaired at a garage. The accomplishment of that result and work incidental thereto, such as testing the automobile, are the work of an independent contractor, and not that of a servant."

10

In *Woodcock* v. *Sartle*, 84 Misc. Rep. 488, 146 N. Y. Supp. 540, a case in which a mechanic was engaged to repair an automobile on the premises of the owner and put it in running order, the court said: "Sartle, in fact, reserved no right to control or direct Smith in repairing the car to be overhauled. He neither had the knowledge or experience necessary to do so. He, in fact, did not assume to direct what should be done or how it should be done. He was only interested in the result to be accomplished. He relied upon and trusted entirely to the mechanical skill and experience of Smith, who undertook the job. The fact that the work was done on Sartle's premises does not change the legal relations between the parties. Had Smith had a shop of his own and had he taken the automobile there to do the work, his duties would have been practically the same."

The same doctrine is clearly stated in the case of *Segler* v. *Callister*, 167 Cal. 377, 139 P. 819, 51 L. R. A. (N. S.) 77, where the court said: "We have, then, the case of a man who has turned his automobile over to a mechanic to put it in order. He exercises no control over the work or over the mechanic in the performance of the work. If, in the due performance of that work, it becomes proper for the mechanic to take the car out on the street to test it, the owner would be no more responsible for damage which might result from the mechanic's bad management of the car than he would if the mechanic, without any authority at all, had taken the car and so used it. The evidence of plaintiff is not sufficient to raise a conflict upon the question, and it certainly needs no citation of authority to show that the owner who has surrendered possession and control of his property, under the indicated circumstances, to an independent contractor, is not

legally responsible for the damages which that contractor may occasion in his use of the property."

From all the foregoing it is very clear that there is no evidence in this case upon which to base the contention that the relationship of master and servant existed between Costan and Evans, and that the court erred in instructing the jury as to this relationship.

On the other hand, the evidence clearly establishes that Evans was acting under a contract with Costan to keep the automobile in repair for ninety days; that Costan looked to Evans for results only, and that the method and means by which they were attained were entirely in the discretion of Evans. Under the circumstances, where the accident occurred while Evans was engaged in testing the car out in performance of his contract, as a result of Evans' negligence, there can be no recovery against Costan.

The judgment of the trial court will, therefore, be reversed, and the facts being sufficient to enable this court to enter judgment for the defendant, Costan, here, without remanding the case to the circuit court for a new trial, this court will set aside the verdict of the jury as to the defendant, Costan, and will enter judgment for him.

*Reversed.*

## Campbell, J., Dissenting:

I concur in the conclusion reached by the court that the instruction complained of is erroneous and should not have been given, and for this reason the judgment of the lower court should be reversed.

I am unable to concur in the conclusion reached by a majority of the court that judgment should be entered in this court for the defendant. The evidence in

the case is, in my opinion, of such a conflicting character that the plaintiff is entitled to have a jury pass upon the same, and for this reason the case should be remanded for a new trial.