# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## MAMIE A. TENNENT v. UNION MUTUAL LIFE INSURANCE COMPANY.

### June 14, 1928.

#### Argued and submitted before Judge Holt took his seat.

1. LIFE INSURANCE—*Lapse of Policy for Non-payment of Premium—Reinstatement—Discretion of Officers.*—Courts will not control the discretion of the officers of an insurance company in refusing to reinstate a member who has forfeited his rights by non-payment of dues, where the contract provides that any person in such circumstances may be reinstated in the discretion of the officers, upon his furnishing them satisfactory evidence that he is in good health.

2. LIFE INSURANCE—*Lapse—Reinstatement—Certificate of Good Health.*—Where a life insurance policy provided that an application for reinstatement after lapse for non-payment of premiums should be accompanied by a certificate of good health signed by the assured, it is perfectly apparent that where assured was dead before the application for reinstatement was made that the assured did not and could not at the time of the application supply a certificate showing that he was in good health.

3. LIFE INSURANCE—*Lapse of Policy for Non-Payment of Premium—Waiver of Lapse—Reinstatement of Policy—Case at Bar.*—The instant case was an action by a widow on a policy of insurance on her husband's life. The policy lapsed by reason of non-payment of the premium, but plaintiff contended that the lapse had been waived and the policy reinstated because of a remittance by her on the day after her husband's death to an agent of defendant, who, with no knowledge of the death of assured, sent the amount of the remittance to defendant asking that the policy be reinstated. But six days later on learning of the death of assured the agent returned the money to plaintiff declaring that he was not authorized to accept the payment. This agent had no authority to waive the lapse, and by the express terms of the policy it could only be reinstated by the company. The policy had frequently lapsed and had been repeatedly reinstated, but in every instance it had been reinstated by the company and not by the agent, and in no instance without a certificate of good health signed by the assured.

*Held:* That the burden of proof was on plaintiff to show that the lapse of the policy had been waived and the policy reinstated, and this burden she had failed to carry.

4.  WAIVER—*Knowledge of Circumstances.*—A waiver of a stipulation in an agreement, to be effectual, not only must be made intentionally but with knowledge of the circumstances. This is the rule when there is a direct and precise agreement to waive the stipulation. *A fortiori* is this the rule when there is no agreement either verbal or in writing to waive the stipulation, but where it is sought do deduce a waiver from the conduct of the party.

5.  AGENCY—*Ratification of Unauthorized Acts of Agent—Knowledge of Circumstances.*—A ratification of the unauthorized acts of an agent, in order to be effectual and binding on the principal, must have been made with a full knowledge of all material facts, and ignorance, mistake or misapprehension of any of the essential circumstances relating to the particular transaction alleged to have been ratified, will absolve the principal from all liability by reason of any supposed adoption of or assent to the previously unauthorized acts of the agent.

6.  LIFE INSURANCE—*Ratification of Unauthorized Acts of Agent—Knowledge of Facts—Death of Assured—Case at Bar.*—The instant case was an action by a widow upon her husband's life insurance policy. The policy had lapsed but the widow contended that it had been reinstated by the action of an agent of the company in accepting payment of the premium and asking the company to reinstate the policy, and that this unauthorized action of the agent had been ratified by the company. The tender of payment of the premium to the agent and the application for reinstatement were made after the death of the insured. There was no pretense that either the agent or any of the general officers of the company had any notice whatever of the death of insured at the time of the alleged ratification.

*Held:* That every other question became immaterial in view of this fact, and that the policy was not reinstated.

Error to a judgment of the Circuit Court of the city of Portsmouth, in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*A. A. Bangel*, for the plaintiff in error.

*M. J. Fulton*, for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

This is a motion in which Mamie A. Tennent, the beneficiary, seeks to recover $2,000.00, the amount of a policy of insurance issued by the Union Mutual Life Insurance Company, Portland, Maine, on the life of her husband, C. L. Tennent.

The defense is that the policy had lapsed for non-payment of the premium. This defense was sustained by the trial court and the plaintiff is here complaining of a final judgment in favor of the defendant company.

The outstanding facts are, that the policy has the usual provisions as to lapse for non-payment of premiums. It was issued January 23, 1923, and required the payment in advance of an annual premium of $69.88 on the 23rd day of January in every year until premiums for twenty complete years should have been paid in cash. The first year's premium was settled by negotiable note, payable to the agent, which was liquidated by several payments during the year. The second year's premium was not paid in advance as required by the policy, but the assured executed and the company accepted what is called a company form note, which matured on March 23, 1924, was not then paid, but was finally paid July 23, 1924. When the third year's premium became due, January 23, 1925, the insured paid the company $20 in cash, was allowed a credit of $6.04 dividend, and executed another form note for $43.84, which reads thus:

"$43.84.                        January 23, 1925.

"For value received by a loan on Policy No. 247467

issued by the Union Mutual Life Insurance Company, three months after date I promise to pay to the order of said company forty-three dollars at American Nat'l Bank, Richmond, Va., with interest at six per cent per annum from date hereof.

"This note is given on account of the premium due January 23, 1925, upon said policy.

"If it is not paid according to its tenor, at its maturity, the policy will then lapse, except if it is given for any premium after three full years' premiums have been paid in cash, the said policy will then be entitled to the benefits of the Maine non-forfeiture law, but in computing the net single premium for extension of insurance, the amount of this note and interest will be deducted from the net value of the policy, thereby shortening the period of extended insurance in accordance with the provisions of said law.

"C. L. TENNENT,

"P. O. Address, Portsmouth, Va.

"175 Hill Ave.

"Due April 23, 1925
"No. 54759."

We need not consider the provisions of this form note which would have been applicable if three full years' premiums had been already paid in cash, because the note was for the third year's premium.

This note was not paid at maturity, and the defendant company agreed to extend the time for payment, and had stamped thereon: "Time for payment of the within note is hereby extended to May 23, 1925, with interest." No further payment having been made, the defendant company again extended the time for payment of the note until June 23, 1925, and thereafter made another extension until August 23, 1925, during which interval a payment of $10.00 had been made, as of

July 21, 1925, which credit was endorsed on the instrument. A further extension was granted until September 23, 1925. A payment of $10.00 was credited on September 11, 1925, and another extension was granted by the company until October 23, 1925. All of these extensions were stamped upon the note by authority of the company after the assured had signed and delivered a certificate of good health. No further payment having been made, according to the terms of the policy, which were also expressed in the note, the policy lapsed October 23, 1925.

The insured, Charles L. Tennent, was suddenly killed December 14, 1925, by what precise means does not appear in the record. His widow, beneficiary and claimant under the policy, was called by telephone on the evening of December 14, 1925, in Portsmouth, by the sheriff of Nansemond county. The sheriff testified that he notified her about nine o'clock on the evening of December 14th of her husband's death, having previously identified her by conversation with another lady in the same house, who said that the dead man was the claimant's husband, and who called her to the telephone. The claimant, Mrs. Tennent, admits having had a conversation at the time and under the circumstances detailed, but denies that she was told that her husband was dead. She says that she simply heard that a man had been killed, and the only description she had was that he was a tall, slim man. As the immediate result of this conversation, however, she went by automobile that night to Suffolk, about twenty miles distant, the journey requiring from forty minutes to an hour, for the purpose of finding out. She reached the county jail in Suffolk about midnight, but saw no one and returned to Portsmouth that night. The next morning, December 15th, she procured a post

office money order for $27.00, and sent it by mail to the agent of the company at Richmond, with this letter:
"DUKE A. PUTNEY,

"Enclose $27.00 the last payment on note for policy No. 247467.  Just came home and found it unpayed or I would of payed it before.   Will not let this happen again.                       "MRS. C. L. TENNENT,
                              "1927 Glasgow St.,
                              · "Portsmouth, Va."

She thereupon sought her brother, who was then in Portsmouth, in the meantime having read something of the occurrence in the newspaper—as expressed by her: "I saw it in the paper about this tall, thin fellow," —and got her brother to return with her to Suffolk to see if the dead man was her husband.   Upon this trip to Suffolk, on the 15th, her brother found the body of a dead man at an undertaker's place of business, and identified it as that of her husband.

Putney, the agent of the company, manager for Virginia and the District of Columbia, with no knowledge that the insured was already dead, sent the amount to the company and asked if they would accept it and reinstate the policy, but thereafter, on December 21st, having learned that the insured was dead at the time, wrote her this letter:
"DEAR MADAM:

"I am returning herewith check for $27.00, for like amount which you sent us on note of Mr. Chas. L. Tennent, as we understand he was dead before this amount was received by me or the company, and we were not authorized to accept payment on this case without health certificate signed by Mr. Tennent that he was in entirely good health.
                       "Very truly yours,
                          "DUKE A. PUTNEY,  Manager."

In the interval she had asked for blank proofs of loss and they had been sent to her.

The claim of the plaintiff on this state of facts is that the lapse had been waived and the policy reinstated because of this remittance. It is shown without contradiction that Putney had no authority to waive the lapse; that by the express terms of the policy it could only be reinstated by the company. One provision of the policy reads:

"Change of Contracts.—Any change in the terms or beneficiaries of this contract or waiver of any of its terms or conditions or of any forfeiture must be in writing, signed by the president, vice-president, secretary, assistant secretary, actuary or assistant actuary, and endorsed on the policy. No person is authorized to make any changes in this contract or waive any forfeiture of it, except as herein provided."

It is provided that "in case of lapse for non-payment of premium, the policy will be reinstated upon production of evidence of insurability satisfactory to the company and the payment of all overdue premiums." It is also provided that "all premiums on this policy are payable at the office of the company in Portland, Maine, but the company's agent holding its receipts, signed by the secretary and to be countersigned by the agent, for premium payable hereon, is authorized to accept payment thereof in exchange for such receipts. A payment made to any other person, or in exchange for any other receipt, will not be binding on the company. If the premiums are not paid when due, or within the period of grace, this policy and the premiums paid hereon become forfeited, and all liability of the company ceases except as herein provided."

By its express terms, the policy provided that proof of death of the assured during its continuance was

essential in order to create any liability upon the company.

As has been shown, this policy had frequently lapsed and had been repeatedly reinstated, but in every instance it had been reinstated by the company and not by Putney, and in no instance without a certificate of good health signed by the assured.

These being the outstanding facts, the court instructed the jury, upon motion of the defendant, as follows:

"1. The court instructs the jury that if they believe from the evidence that at the time of the death of the insured the premium on the policy had not been paid in full within the period fixed in the policy, or within the period of extension granted to the insured by the defendant company, then the policy had, by its terms, become forfeited and they should find for the defendant.

"2. The court instructs the jury that if they believe from the evidence that C. L. Tennent gave the insurance company the premium note offered in evidence, which became due on October 23, 1925, and if they further believe from the evidence that this note was not paid on October 23, 1925, and if they further believe from the evidence that the time of payment of said note was not further extended by said company, then the policy upon which this suit is brought was by its terms forfeited on October 23, 1925, and was not in force at the time of the death of the insured and they should find for the defendant."

Notwithstanding these undisputed facts and these instructions, the jury returned a verdict in favor of the plaintiff for $2,000.00.

The defendant thereupon moved the court to set aside the verdict of the jury, on the ground that the verdict was contrary to the law and the evidence, and

to enter judgment for the defendant. This motion was sustained.

We have no doubt whatever of the correctness of this judgment. The verdict of the jury is not only unsupported by the evidence, but is plainly against the evidence, and no other judgment could have been properly entered.

[1] It seems hardly necessary to cite authority, but in view of the claim of the plaintiff that the lapse of the policy had been waived by the company, we cite these cases as among the many which might be cited in support of the judgment.

*Metropolitan L. Ins. Co.* v. *Hall*, 104 Va. 572, 52 S. E. 345.

In *Conway* v. *Minnesota Mutual L. Ins. Co.*, 62 Wash. 49, 112 Pac. 1106, 40 L. R. A. (N. S.) 148, the facts were, that the policy lapsed in July, 1908, because of the failure of the assured to pay the premium. Thereafter, on November 5, 1908, he applied for reinstatement, enclosing with his application a certificate that he was in good health. The company acknowledged receipt of the remittance, but informed Conway that his certificate had lapsed, but that he might be reinstated upon furnishing satisfactory evidence of his good health, but in order for him to procure reinstatement it would be necessary for him to be examined by the local examiner of the company at Tacoma, and that such examination must show a satisfactory condition of health, and the premium was returned. Thereafter Conway presented himself to the company's physician for examination, and mailed the certificate to the company, but was informed by the company that his application for reinstatement was rejected. It was held that courts will not control the discretion of the officers of an insurance company in refusing to

reinstate a member who has forfeited his rights by non-payment of dues, where the contract provides that any person in such circumstances may be reinstated in the discretion of the officers, upon his furnishing them satisfactory evidence that he is in good health.

[2] Applying this rule, which is well supported, it is perfectly apparent here that the assured did not and could not, at the time of the tender of the last payment, supply a certificate showing that he was in good health, and that the company has never reinstated him after the lapse which occurred October 23, 1925, long before his death, December 14, 1925.

[3] This lapse of the policy being so apparent, the burden is, of course, upon the claimant to show that it has been waived and the policy reinstated.    In this she has failed.

In *Bennecke* v. *Connecticut Mutual Life Ins. Co.*, 105 U. S. (15 Otto) 355, 26 L. Ed. 992, the facts were, that there was a provision in the policy which reads:    "The said insured is under this policy freely permitted to reside in any civilized abode in the western hemisphere, lying north of the thirty-second parallel of north latitude in the United States, and lying south of said thirty-second parallel, exceptions from the first day of July to the first day of November, and in the eastern hemisphere lying north of the forty-second parallel of north latitude and west of the fortieth meridian of longitude east from Greenwich, and he may also pass as a passenger by usual routes and means of public conveyance to and from any port or place within the foregoing limits, but if he shall, at any time during the continuance of this policy, pass beyond or be without the foregoing limits without the consent of this company previously given in writing in each or either of

the foregoing cases, then this policy shall become and be null and void." And also: "That in every case in which this policy shall cease and determine, or shall be or' become null and void, all premiums paid in respect to the same shall be forfeited to the company." Then on the margin, at the bottom of the policy, there appeared this note of caution: "Agents of the company have no authority to make, alter or change any condition of the policy, nor to waive forfeiture thereof." The premium for the year beginning January 29, 1878, had been fully paid. The assured left his home in Illinois September 26, 1878, and went to New Orleans, La., which is south of the thirty-second parallel of latitude, without the consent of the insurance company. He remained there until October 15, 1878, when he died in a hospital in that city of yellow fever. Ansley had been the agent of the Connecticut Mutual Life Insurance Company at Bloomington, Illinois, for fifteen years. On October 16, 1878, he first heard that the assured had gone to New Orleans. On October 17th Ansley called on a brother-in-law of the assured and told him that he had heard that Bennecke, the assured, was in New Orleans; that on account of this violation of the conditions of the policy his insurance was forfeited; that a southern permit, costing $20.00, should be paid for, and advised him to pay it for the assured. After consultation with the wife of the assured, the brother-in-law went to Ansley's office and paid him $20.00, and took from him a receipt showing that it was "the amount required for a southern permit on policy of Adolph Bennecke in the Connecticut Mutual Life Insurance Company of Hartford, Conn., No. 52242. Amount of policy $2,000.00. John Ansley, agent." At the time of taking this receipt, neither the brother-in-law, nor the agent, nor the wife of the

assured knew that Bennecke was dead. The amount was remitted by the local agent to the State agents of the company, at Chicago, and they acknowledged receipt. In order to make the permit effective, however, it was necessary to remit the amount to the office of the company at Hartford, Conn., and the company only could issue the permit. The permit requested was never issued, and on November 6th, Ansley, the local agent, having become satisfied that Bennecke was dead at the time the $20.00 was paid him for the permit, tendered the amount to the brother-in-law of the assured, stating that the assured was dead at the time the money was paid as a reason therefor, and this tender was refused.

A repetition of what was said in that case is so well supported by logic and precedent as to be decisive here: "It does not appear from the findings of fact made by the court that either Ansley, the agent at Bloomington, or Stearns, Dickinson & Company, the agents at Chicago, had any direct authority to waive a forfeiture. But even if it were shown that they had such authority, and had waived the forfeiture, or that the company itself had waived it, the waiver would not, under the circumstances of this case, be binding on the company.

[4] "A waiver of a stipulation in an agreement, to be effectual, not only must be made intentionally but with knowledge of the circumstances. This is the rule when there is a direct and precise agreement to waive the stipulation. A *fortiori* is this the rule when there is no agreement either verbal or in writing to waive the stipulation, but where it is sought to deduce a waiver from the conduct of the party. Thus, where a written agreement exists and one of the parties sets up an arrangement of a different nature, alleging conduct on

the other side amounting to a substitution of this arrangement for a written agreement, he must clearly show not merely his own understanding, but that the other party had the same understanding. *Darnley (Earl)* v. *R. Co.*, L. R., 2 H. L. 43.

"The same rule applies to the ratification by the principal of the unauthorized acts of his agent.

[5] " 'It is perfectly well settled that a ratification of the unauthorized acts of an agent, in order to be effectual and binding on the principal, must have been made with a full knowledge of all material facts, and that ignorance, mistake or misapprehension of any of the essential circumstances relating to the particular transaction alleged to have been ratified, will absolve the principal from all liability by reason of any supposed adoption of or assent to the previously unauthorized acts of the agent.' *Combs* v. *Scott*, 12 Allen [Mass.] 496.

"And it has been declared by this court that 'no doctrine is better settled, both upon principle and authority, than this, that the ratification of an act of an agent previously unauthorized must, in order to bind the principal, be with a full knowledge of all the material facts. If the material facts be either suppressed or unknown, the ratification is treated as invalid, because founded on mistake or fraud.' *Owings* v. *Hull*, 9 Pet. 607 [9 L. Ed. 246]; see also *Diehl* v. *Ins. Co.*, 58 Pa. 452 [98 Am. Dec. 302]; *Bevin* v. *Ins. Co.*, 23 Conn. 244; *Viall* v. *Ins. Co.*, 19 Barb. [N. Y.] 440."

[6] There is and can be no pretense in this case that either the agent, Putney, at Richmond, or any of the general officers of the company in Maine, had any notice whatever of the death of the insured at the time of the alleged ratification. Every other question dis-

cussed in the case becomes immaterial in view of this fact. The policy lapsed when the assured made default in payment of the premium, October 23, 1925, and was never reinstated, so that it seems to us obvious that there can be no recovery.

*Affirmed.*