# Richmond

A. L. Moncier v. Susie Green.

December 6, 1943.

Record No. 2721.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Donald T. Stant, Bradley Roberts* and *Curtin & Haynes,* for the plaintiff in error.

*George M. Warren* and *Dick B. Rouse,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This is an action at law for damages sustained by Susie Green, an aged colored woman, when the truck owned by A. L. Moncier, the defendant, was backed upon her at an intersection of streets in the city of Bristol, Virginia. The case was tried in the corporation court and there was a verdict for the plaintiff of $500.00, which was approved by the court.

It is conceded by both sides that the driver of the truck was negligent and that the verdict of the jury was not excessive. The sole question is whether or not the driver was the defendant's agent and, if not, whether the defendant ratified the substitution of the actual driver for the one who had been employed by him for the service in which the truck was engaged on the occasion.

The accident happened on October 3, 1942, about eleven o'clock, A. M. A. L. Moncier had a contract to carry the mails between the railroad station to the post offices in Bristol, Virginia and Bristol, Tennessee. The truck involved was used in this service and he had two drivers. All trains had to be met, which necessitated working in the night as

·well as during the day. His driver for the particular occasion was named Pennington and when the time came for him to start on one of his trips in the morning he complained that he had been without sleep for two or three nights and he requested one, Ted Grant, to work for him. Grant consented to do this, for which he was to be paid by Pennington. It was while Grant was driving that the accident occurred. His brother was in the truck with him. The two were youths, one may say.

The defendant's father, J. O. Moncier, worked for him—not all the time—but quite regularly. He was an employee, as the others were, and sometimes drove the truck, and he was frequently at the railroad station and the post offices engaged in helping his son.

In the forenoon of the day of the accident he saw the boys driving the truck and being familiar with it but not with them, his attention was arrested, and when they drove the truck up to the railroad station he asked them how they came to be driving it. Grant accounted for his authority as we have stated and he testified that Mr. J. O. Moncier drove back with them to the Virginia post office and that he asked him how he would like to take the job of driving the truck regularly.

Mr. Drinkard, the postmaster, was asked the following questions and his answers are here given:

"Q. During the course of the year how many drivers would you say Mr. Moncier had had driving that truck?

"A. I don't know. I'm not interested in his drivers. All I'm interested in is his getting the mail to and from the station on time. If any trouble I would call him. I would say roughly three or four. Mr. Moncier's father is there most of the time and looks after it. Whether they have a helper with them or not, Mr. Moncier's father is there, he is usually there during the daytime.

\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Q. You don't know if he (Ted Grant) has ever been employed to drive there or not?

"A. No, sir. I am just interested in Mr. Moncier. If I have any trouble I holloa for him.

\*  \*  \*  \*  \*  \*

"Q. The contract which you have, or which the government has, is with Mr. Moncier, and not with his father?

"A. It is with A. L. Moncier, issued on a competitive bid, and the contract is granted by the Second Assistant Postmaster."

Mr. O. T. Powell, the assistant postmaster, was asked a similar question as to how many different drivers had operated the truck in the past few months and the pertinent part of his answer was this:

"A. And then, as I said before, Mr. Moncier's father, he always is the pinch-hitter. He will come in in case a fellow don't take the mail and takes charge of it very efficiently. And at other times—they had a man who worked several months. Of course, he didn't work twenty-four hour shifts or anything like that, but a Davidson boy worked several months for Mr. Moncier."

The testimony we have quoted is the basis for the plaintiff's claim of agency and ratification; the existence of one or the other must be present if she is to recover.

The defendant and his father testified in positive terms that his father had no right to hire or fire any of the employees; that his father served his son just as any other employee did; that A. L. Moncier, alone, had the authority to employ and discharge those who worked for him; that he had not at any time delegated such authority to anyone. This testimony was uncontradicted, unless contradiction can be found in the testimony quoted and the incident circumstances.

It is important to note that Pennington had no authority, express or implied, to employ a driver to take his place. There is no evidence that the defendant, A. L. Moncier, confirmed or ratified his action in doing so. The testimony is to the contrary.

The court, in submitting the case to the jury, made this observation:

"The only basis, though, on which I can see that the case can go to the Jury, in regard to the authority of this Grant boy to drive, would be whether or not it was in the apparent scope of the authority of J. O. Moncier to employ him, or to ratify his act in operating the truck, and then, of course, the next question would be, if the Jury gets by that, is whether or not he did ratify his actions in operating the truck."

■■ We said in the case of *Amalgamated Clothing Workers v. Kiser*, 174 Va. 229, 6 S. E. (2d) 562, 125 A. L. R. 1251:

"A contract can only be ratified by the person who had the power to authorize it. Ratification is a substitute for original authority. Here the defendant did not have the power to ratify it. 2 Am. Jur. Agency, Sec. 216, page 173."

■ The Law of Automobiles (Michie) 389 Section 133:

"It may be stated as a general proposition of law that unless authorized expressly or impliedly the servant has no authority to employ other persons to assist him in the performance of his duties, or delegate the performance of such duties to others; and the master will not be held liable for the negligent acts of such sub-servants who are employed or allowed by the servant to assist him without the master's authority, consent or ratification."

■ It is so clear to us that the indefinite, desultory and unconvincing statements of the witnesses, which we have quoted, is so barren of anything stable upon which the plaintiff's reliance can be rested as to give way utterly to the positive assertions made by the defendant and his father.

We reverse the judgment of the court and enter judgment for the defendant.

*Reversed and final judgment.*

Hudgins, J., dissenting.