# Richmond

## JAKE JACOBSON v. MRS. W. H. KIRN AND OTHERS.

May 7, 1951.

Record No. 3764.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*James G. Martin & Sons* and *A. A. Bangel,* for the plaintiff in error.

*Williams, Cocke & Tunstall, William G. Maupin* and *William L. Parker,* for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

This proceeding by notice of motion for judgment was brought to recover damages for personal injuries sustained by Jake Jacobson, on account of the alleged negligence of the defendants in error, in failing to have the door of the elevator shaft in their building closed, by reason of which he fell into the pit of the shaft in attempting to take passage in the elevator to carry him to an upper floor of the building.

Defendants pleaded the general issue and filed an affidavit denying that they opened or permitted the door to be opened as alleged in the notice of motion.

The case was tried before a jury and a verdict returned in

favor of the plaintiff. Upon motion of the defendants, the trial court set aside the verdict as "contrary to the law and evidence, without evidence to support it, and plainly wrong," and entered judgment for defendants. We granted a writ of error.

The sole assignment of error relates to the sufficiency of the evidence to support the verdict.

There is no conflict in the evidence. Plaintiff argues that it supports certain inferences sufficient to impose liability upon the defendants.

Jacobson is an attorney at law, 41 years old, and blind. For a number of years he has had his office in the New Kirn Building, in the city of Portsmouth, Virginia. The building is owned and operated by Mrs. W. H. Kirn, M. W. Armistead, Jr., Mrs. Ruth A. Robinson, Henry Kirn, Miss Bessie Kirn, Miss Clara Kirn, Mrs. G. A. Baker, Miss Rebah Armistead, M. W. Armistead, Jr., Trustee for H. K. Armistead, Armistead Dennett and William Dennett, the defendants. It is four stories high, with stores on the ground floor and fifteen to twenty offices on each of the three upper floors. There is a double set of doors to its vestibuled entrance. The distance from the inner doors to its single elevator is approximately seven feet, and the outer doors are four feet beyond the inner doors.

During all of the time that he had been a tenant in the building, Jacobson had gone up and down in the elevator, and traveled elsewhere in the city of Portsmouth, without assistance, using a cane pointed in front of him. It was his custom to arrive at the building about nine a. m., enter the elevator, and ride up to his office on the fourth floor.

On May 21, 1949, about twenty minutes to nine a. m., Jacobson was driven in an automobile to a point on the sidewalk near the entrance to the building. He then entered the building on the ground floor, walked towards the elevator, holding his cane out in front of him as usual to feel his way.

According to his own testimony, the circumstances under which the accident happened were as follows:

"When I entered the vestibule, I heard someone singing in the elevator—what I thought was the elevator. He was singing or humming, I don't recall which now. With my cane in front of me, I walked toward the elevator, stepped aside—the front of the elevator is right next to the door—then my cane went into the doorway, it was open, I stepped through, and when I stepped

through, then is when I fell. When I stepped through, I landed right on this foot and, when I did, then I went over.

"When I went over, I reached over and felt this leg. I knew then it was broken; I could feel it. A colored fellow was in the elevator pit when I fell."

He said he fell approximately four feet to the bottom of the pit. As a result of the fall he broke both of the bones in his right leg.

Additional circumstances, which were uncontradicted, were shown by the following testimony:

The "colored fellow" to whom Jacobson referred as being in the elevator pit was Otis Goodrich, twenty years of age. Shortly before the plaintiff entered the building, Goodrich went down into the pit to clean out some trash, the elevator at the time being on the second floor. He opened the door of the elevator shaft, got into the pit, shut the door behind him, collected the trash in a receptacle, then, with the receptacle in one hand, climbed on a pipe in order to reach the latch on the closed door, and opened the door. While standing on the pipe, with his upper body above the level of the floor, and in the act of getting out of the pit of the shaft, Jacobson walked into the open doorway. According to Goodrich, Jacobson landed in the former's hands, as Goodrich tried to catch the falling man under his arms. Goodrich fell back into the pit, carrying with him Jacobson, who weighed about 245 pounds.

The latch of the shaft door is three and one-half to four feet above the floor of the lobby, and the bottom of the pit is approximately four or five feet below the level of that floor.

M. W. Armistead, Jr., was the only one of the defendants who had anything to do with the management of the New Kirn Building, or ever visited it, so far as is shown by the record. Sole and exclusive management of it had been, for more than ten years before the date of the accident, vested in him by a power of attorney from all of the remaining owners. He had complete control and supervision. He attended to the drawing of leases, repairs, insurance, and the employment and discharge of help. No part of his authority was ever delegated to any other person. He had never employed any person for work in or around the building without making an investigation of that person's responsibility and character. He employed Cornelius Alexander as janitor of the property approximately two and

one-half years before the accident, after inquiring and investigating the latter's references and finding them satisfactory. Alexander, sixty-six years old, was paid $110 per month for performing the usual services of a janitor.

Mr. Armistead visited the building at times, but not often. His visits were in the daytime after the early morning hours, and on those occasions he saw only the day maid, the elevator girl, and Cornelius Alexander, the regular help, at work. Goodrich's name was not carried on his payroll, nor were any payments made to him. He testified positively and specifically that Alexander had never been given any authority to employ or discharge any of the employees in the building, and that until after the happening of the accident he had never seen or heard of Goodrich. As soon as he found out that Alexander had employed Goodrich, he went to Alexander's home and instructed him to discharge the younger man immediately.

Cornelius Alexander testified that he hired Goodrich; that Mr. W. M. Armistead, Jr. hired all of the other employees; that Armistead never gave him any authority to hire anybody; and that he had never told Armistead that he, Alexander, had hired Goodrich.

W. M. Armistead, Jr., and his son, John T. Armistead, are partners engaged in the real estate business in the city of Norfolk under the firm name of Armistead and Borum. John T. Armistead usually collected rents of the building about twice a month, visiting it for that purpose before ten o'clock a. m. He said he had no authority to hire or discharge employees for duties connected with the building, and knew nothing about the employment of Goodrich by Alexander until after the accident.

A colored girl, Ellen Lewis, was employed as the operator of the elevator. On the morning of May 21, 1949, she arrived at the building around eight-thirty, went upstairs and unlocked the door to the elevator. When the accident happened she was on the second floor engaged in sorting out some newspapers, the delivery of which to the various tenants in the building was a part of her duties. She had not begun running the elevator as no one had rung its bell for service. She knew Goodrich was in the pit, but knew nothing of the circumstances of the accident.

The only negligence charged in the notice of motion is that the defendants permitted the door of the elevator shaft to be left open. According to the evidence, the only person who had

anything to do with that door at the time of the accident was Otis Goodrich.

Therefore, the first material question for our consideration is whether or not Goodrich was a servant of the defendants.

The evidence, without contradiction, shows conclusively that Cornelius Alexander, the janitor of defendants' building, had no authority to employ Goodrich as a servant of the defendants; that none of the defendants had any actual knowledge of the employment of Goodrich by Alexander until after the accident; and that as soon as M. W. Armistead, Jr., the manager of the building, learned of the employment of Goodrich, he immediately directed Alexander to discharge him.

In Virginia, the principles we have followed in determining the relationship of master and servant are in accord with the great weight of authority. We have uniformly held that under the doctrine of *respondeat superior,* an employer is not liable for the negligent act of an assistant who has been procured by an employee, unless such employee was clothed with authority, express or implied, to employ help,—that is, unless such employee in engaging an assistant acted within the scope of his employment. 35 Am. Jur., Master and Servant, sections 539-540. Restatement of the Law—Agency, Vol. 1, page 221.

In 57 C. J. S., Master and Servant, section 564 (b), page 282, citing *Moncier* v. *Green,* 182 Va. 127, 27 S. E. (2d) 921, and decisions from seventeen other jurisdictions, this is said:

"Where there is neither express nor implied authority given a servant to employ another to perform or to assist him in the performance of his work, or a subsequent ratification by his employer of such employment, the relation of master and servant between the employer and one so employed by his servant does not exist and he is not liable for the negligent acts of the latter under the doctrine of respondeat superior."

In *Moncier* v. *Green, supra,* the defendant owned a truck which was used to carry mail. Pennington, the regular driver of the truck, without authority from his employer, employed a man named Grant to operate the truck for him on one occasion, upon an agreement that Pennington was to pay him therefor. While Grant was operating the truck, he negligently injured Green. There we said:

"It is important to note that Pennington had no authority, express or implied, to employ a driver to take his place. There

is no evidence that the defendant, A. L. Moncier, confirmed or ratified his action in doing so. The testimony is to the contrary.'' (182 Va. 130).

*   * .   *   *   *   *

On page 131 of the same volume, we approved the following statement from ''The Law of Automobiles (Michie) 389, Section 133:

''It may be stated as a general proposition of law that unless authorized expressly or impliedly the servant has no authority to employ other persons to assist him in the performance of his duties, or delegate the performance of such duties to others; and the master will not be held liable for the negligent acts of such sub-servants who are employed or allowed by the servant to assist him without the master's authority, consent or ratification.''

In *Board of Trade Bldg.* v. *Cralle*, 109 Va. 246, 63 S. E. 995, 132 Am. St. Rep. 917, 22 L. R. A. (N. S.) 297, the defendant owned an office building, in which it operated two passenger elevators. Cralle entered the building for the purpose of going to the seventh floor. He found the elevator at floor level, with the door open, but without an operator. Present was one, Zachary, employed as a hall boy in the building, but not as an elevator operator. Zachary told a boy standing in the lobby to take Cralle up in the elevator. The boy did and, by negligent operation of the elevator, injured Cralle. On appeal we reversed a judgment in favor of Cralle, holding that the owners of the building could not be held responsible for the negligence of the boy, who was employed by Zachary without authority and outside of the scope of his employment. We said:

''While it is well settled that a master is liable for the acts or omissions of his employees which result in injuries to third persons, when the act or omission of the employee was within the scope of his employment and in the line of his duty while engaged in such employment, it is equally well settled that neither the principle upon which that rule is based (*'qui facit per alium facit per se'*), nor the rule itself, can apply to a case where the party sought to be charged does not stand in the character of employer to the party by whose negligence the injury was occasioned. (Cases cited).

''It also seems to be settled that the master is liable for the negligence of a person employed by his servant in the prosecu-

tion of the master's business, or of a person who assists his servant at his request, provided the servant had express or implied authority to procure assistance, and the negligent act complained of was done within the scope of the employment." (Cases cited).

In *Clover Creamery Co.* v. *Kanode,* 142 Va. 542, 129 S. E. 222, the driver of a milk delivery wagon, contrary to the instructions of his employer, employed an infant to assist him in the delivery of milk for compensation, and the infant, while assisting the employer's servant in the delivery of milk, was run over and killed by the wheels of the wagon. The defendant company was held not bound by the act of its servant in permitting the infant to ride on the wagon, or assist in the delivery of milk.

In *Johnston* v. *Kincheloe,* 164 Va. 370, 180 S. E. 540, Kincheloe requested one, Arrington, to drive him in Arrington's car to a certain place where Kincheloe wanted to get some fruit jars. On the return trip, Arrington's car collided with the truck of the defendant, Johnston, and Kincheloe was killed. Holding that Arrington was not Kincheloe's servant, and that Arrington's negligence could not be imputed to Kincheloe, we said:

"A master is one who has the power to control, and a servant is one whose duty it is to obey. Plainly this relationship did not exist here. Kincheloe had no power to control Arrington, and Arrington was not under the necessity of obeying him."

It is not claimed in this case that defendants had actual knowledge of the employment of Goodrich. It is argued that because Goodrich had engaged in certain work in the early morning in the office building over a period of two or three years, knowledge of his employment ought to be imputed to the defendants, and, therefore, they should be held to have acquiesced in and ratified his employment.

There is no evidence of express ratification of the employment of Goodrich. The testimony is directly to the contrary. As to acquiescence or implied ratification of his employment, it is important to note that there was not a single circumstance shown which would put defendants on inquiry as to the existence of such a person as Goodrich. None of them ever saw him working in the building, and they had no reason to believe he was employed there by any one.

It is well settled that there can be no acquiescence or ratification without knowledge. *Clover Creamery Co.* v. *Kanode,*

*supra,* page 547; *American Nat. Bank* v. *Ames,* 169 Va. 711, 733, 194 S. E. 784; *Tennent* v. *Union Mut. Life Ins. Co.,* 150 Va. 548, 560, 143 S. E. 705.

In *E. I. DuPont de Nemours & Co.* v. *Taylor,* 124 Va. 750, 759, 98 S. E. 866, we said:

"Much has been said in the argument about 'opportunity for knowledge,' as though it were always the equivalent of imputed knowledge. But such is not the case. It is only when men of ordinary prudence and observation would have observed under like circumstances that it can be so construed. Mere failure to observe when there is no occasion for observation, is not negligence. It is only negligent ignorance that can be chargeable as the equivalent of knowledge."

We repeat there is nothing in the record which put defendants on notice that Goodrich or any one else was performing a part of the duties which Cornelius Alexander was employed to perform, and which were apparently being performed. On the other hand, there is positive testimony from Alexander, Goodrich, and W. M. Armistead, Jr., that the fact Goodrich was working in the building was wholly unknown to any of them.

"Notice is a matter of fact, and is to be proved like all other facts, by direct proof of the fact itself, or by proof of circumstances from which the fact may be justly inferred." (Citing cases). *Hofheimer* v. *Booker,* 164 Va. 358, 366, 180 S. E. 145.

See also, *Carter* v. *Thorp,* 114 Va. 348, 76 S. E. 950.

The cases upon which plaintiff relies may be distinguished from the present case either on questions of fact or law, or of both. *Murphy's Hotel* v. *Cuddy,* 124 Va. 207, 97 S. E. 794, merely holds that one maintaining a passenger elevator in a hotel or other public building is a common carrier and governed by the same rules applicable to other common carriers.

In *Morgan* v. *Saks,* 143 Ala. 139, 38 So. 848, the question of an unauthorized person opening an elevator door is not involved.

In *Colorado Mtg., etc., Co.* v. *Rees,* 21 Colo. 435, 42 P. 42, the defendants were held guilty of negligence in maintaining and keeping the fastening to their elevator door in a defective condition.

In *Tousey* v. *Roberts,* 114 N. Y. 312, 21 N. E. 399, 11 Am. St. Rep. 655, it was held that there was sufficient evidence for the jury to find that defendants knew, or should have known, that a

certain person was operating an elevator, whereas in the present case the undisputed evidence is that the defendants here did not know that Goodrich was working in their building.

See *Cole* v. *German Sav., etc., Soc.*, (C. C. A.), 124 F. 113, 121, 63 L. R. A. 416, 423, where the holdings in the last two cases named were criticized.

■ There being no conflict in the evidence on the question of the relationship of master and servant as between the defendants and Goodrich, the question of such relationship was properly one of law for the court. *Appalachian Power Co.* v. *Robertson*, 142 Va. 454, 457, 129 S. E. 224; *Costan* v. *Smith*, 143 Va. 348, 351, 130 S. E. 235.

See also, *Western Union Tel. Co.* v. *Phelps*, 160 Va. 674, 682, 169 S. E. 574.

■ Jacobson, having failed to show that the janitor, Alexander, acted within the scope of his employment, or with express or implied authority from the defendants to employ assistants, or that the defendants acquiesced in or ratified the acts of Alexander in securing the services of Goodrich, he must fail in this action. A consideration of other questions raised in the briefs, relating to proof of negligence as the proximate cause of the accident, is not, therefore, required.

The judgment of the trial court is affirmed.

*Affirmed.*