Swing, J
This was an action by the plaintiff against the defendant, asking that plaintiff be re-instated in the defendant association as a member.
In the year 1881, plaintiff became a member of said association, taking out a policy for $5,000 in favor of his wife Sarah Graveson. He continued to pay all assessments until February 1, 1890.
Notice was sent to plaintiff at his place of business in the city of Cincinnati, at which place such notice had heretofore been sent. But the same was not paid within fifteen days— the time within which all assessments by the terms of the policy then were payable, or the policy was to be forfeit- *173 able; but by the terms of the policy, the member might within thirty days upon the payment of all arrearages be restored to membership.
On the first of March, 1890, plaintiff not having paid the assessment due February 1, 1890, and the thirty days not having expired, the defendant sent to plaintiff as before a notice of an assessment due March 1, 1890, and on the 11th day of March following, the assessments not having been paid, the defendant declared the policy forfeited. On the following day, the 12th of March, the defendant’s agent, his bookkeeper, came to the office of the defendant with the notices of February and March, and offered to pay the same, but defendant refused to accept the payment. Nothing more was done in the matter until the following September, at which time plaintiff discovered that his bookkeeper was a defaulter, and had neglected to pay the assessments referred to. Said bookkeeper had been in the habit of paying these assessments, and said plaintiff had relied upon his paying them, and had supposed that they were regularly paid. Whereupon plaintiff went to the defendant, and offered to pay all arrearages, and asked to be re-instated.
But defendant, through its secretary, who was its executive officer, refused to re-instate him, giving as a reason for said refusal that defendant was too old. The plaintiff, having taken counsel, insisted that this was not a good reason why he should not be re-instated, and finally the company, after consultation with their attorney, and after suit was brought, agreed that this was no valid reason. Thereupon plaintiff was required to furnish a satisfactory application and medical examination before he could be restored.
It was a condition of the policy that a member whose membership had been forfeited by reason of having failed to pay his assessments, might be restored at any time thereafter by furnishing a new and satisfactory application and medical examination according to the form of the association, and paying all arrearages.
*174 The rules of the association provided for medical examiners and a medical director.
It was the duty of the medical director to make all examinations of personal applicants, and to examine all written applations reported by medical examiners, and it was within his discretion to accept or decline any applicant, according to the risk.
The plaintiff made out his application for restoration on the blank furnished by the company, and was examined by the medical director. The plaintiff's evidence tended to prove that on the completion of the examination, the medical director said to the plaintiff that his general health was all right, but that he was too old; but the medical director testified that he found plaintiff’s pulse to be 76 to 100,and that here-ported adversely on the application for that reason. Evidently this high pulse rate was referred to at the time, for it was claimed by plaintiff that he was suffering from a cold, and was nervous; at any rate, it was agreed that another examition should be made, which was had. Upon this subsequent examination the pulse was found to be 80 per minute, with every fourth beat an intermission of a beat, which would make the pulse rate 100.
As a result, the medical director finally rejected the application.
It was in evidence, that at least on one occasion the defendant had accepted from plaintiff's bookkeeper payment of dues after the time for payment had gone by, and it also was shown that “ occasionally" the defendant had accepted payment from other members after the expiration of time of payment upon certificates of good health furnished by the members themselves. 'This was done by the secretary, the company's executive officer. Whether, with the knowledge and approval of the trustees, who constituted the governing officers of the association, was not disclosed.
Upon the trial of the case expert medical witnesses were called, with the result that there was a conflict of testimony as *175 to whether or not the pulse rate of the plaintiff was such as to make him an unsuitable risk. All agreed that it was a high rate, but the testimony of plaintiff's witnesses was to the effect that plaintiff's condition being otherwise unobjectionable, this high pulse rate was no cause for rejection. Defendant's witnesses, however, testified it made the plaintiff an unacceptable risk.
In this court plaintiff filed an amended petition, setting up bad faith in the rejection of plaintiff’s application, and also claiming a waiver of the forfeiture, which issues were not made in the trial before the court of common pleas.
It was claimed in the first place that the failure to pay the assessments was the result of unavoidable accident or mistake for which the court can grant relief; but we do not see h.ow this claim can be maintained. It is not claimed that plaintiff's agent, his book-keeper, who was entrusted with the duty of making these payments, made any effort to pay within the time required,-or that he was prevented from so doing by any accident or surprise. The only evidence relating to this matter would indicate that the failure to pay was the result of dishonesty or neglect on the part of the book-keeper. If the act of plaintiff’s agent was not, as to the association, a mistake or accident, but was the result of dishonesty or neglect, we cannot see how it could be made a mistake or accident as to plaintiff. The only accident or mistake as far as plaintiff was concerned, was that he had employed a dishonest or incompetent agent to transact his business. With his employment the company had nothing to do, and if the plaintiff was injured by the carelessness or dishonesty of his agent, he should alone suffer the loss.
In the second place,it was urged that the defendant waived the right to forfeiture, first, because the defendant sent plaintiff notice of the assessment due March 1. But we cannot agree to this. Plaintiff had thirty, days from February 1, 1890, within which to make payment, and be restored without a medical examination, and these thirty days did not expire *176 until March 2; therefore we do not see how, by sending out the statement of March 1, two days before it could declare a forfeiture, that it prevented the defendant from declaring a forfeiture after the expiration of the thirty days. The forfeiture in fact was not declared until March 11, ten days after the March notice. The limitation under plaintiffs policy was fifteen days, which was afterwards changed as to subsequent policies to ten days, and the secretary supposed at first that the forfeiture might be declared for March also, but in fact it was made as to the February assessment.
It does not appear that plaintiff was either induced to do or not to do anything in regard to paying the February assessment because notice was sent to him as to March, or that plaintiff was prejudiced because defendant did not declare the forfeiture at a date sooner than it did, as it had a right to do.
Neither did the acts of the secretary in accepting payments after due on other occasions change, the right of the company to insist on payment of dues according to the contract, and plaintiff did not seem to have been misled thereby in not making payment of the February dues.
And second : — It was claimed that the defendant having refused to permit plaintiff to pay up all the arrearages and be restored when he presented himself to defendant in September, for the reason that he was too old, that thereby defendant waived the provision of the policy which provided for the furnishing of a satisfactory medical examination. While it may tend to bring in question the good faith of the defendant, we are unable to see any element of waiver as to the conditions of the contract. Plaintiff was not induced to part with anything or give up any rights that he had in the contract by reason of this claim, and we cannot see how the defendant should be compelled to surrender any of its rights under the contract.
This brings us to the only remaining question in the case, and that is as to the medical examination — was it satisfactory ? *177 In the first place, to whom was it to be satisfactory ? The constitution and by-laws provided that as to all applications it should be within the discretion of the medical director to accept or decline any application’; but as to forfeiture, it provided that “ by furnishing a new and satisfactory application and medical examination” one might be restored, saying nothing as to whom this examination should be satisfactory. We are of the opinion, however, that this examination must be satisfactory to the medical director. It certainly could not have been intended that the examination should only be satisfactory to the applicant, or to any one whom he might select to make the examination. Why should the defendant require the performance of these conditions if they were not to be satisfactory to the defendant?
Stephens, Lincoln & Smith, for plaintiff.
Harmon, Colston, Goldsmith & Hoadly, for defendant.
But in passing on the examination, we think the rights of plaintiff, under his contract, required of the defendant that the judgment of the medical director should be a fair and honest judgment, and in accord with the established rules of medical authority, and not an arbitrary or capricious judgment.
And in our judgment, the action of the medical director was honest, and was sustained by the weight of the evidence of the medical experts produced at the trial. We are therefore satisfied that we cannot grant the plaintiff the relief asked for, and must dismiss the petition.
But while we see no rights that plaintiff has that we can enforce, we beg leave to suggest to the defendant whether or not there are not some moral obligations due from it to the plaintiff which our judgment does not satisfy.