[No. 9272.    Department Two.    February 1, 1911.]

JAMES J. CONWAY *et al.*, *Appellants*, v. MINNESOTA MUTUAL LIFE INSURANCE COMPANY, *Respondent.*[1]

INSURANCE—LIFE INSURANCE—FORFEITURE—REINSTATEMENT—DISCRETION OF OFFICERS.  Under a policy of mutual life insurance providing that a delinquent member may be reinstated in the discretion of the officers upon furnishing satisfactory evidence that he is in good health, the discretion of the officers in refusing a reinstatement is not a judicial discretion reviewable by the courts; and it cannot be said that the officers were not justified in refusing a reinstatement on its appearing that his habit of using liquors was increasing.

SAME—FORFEITURE—WAIVER.  Where the secretary of a mutual life insurance company, without authority or notice to the proper officers, accepted a delinquent assessment without a reinstatement under the terms of the policy, it is not a binding waiver of the right of the company to refuse a reinstatement after another default.

DUNBAR, C. J., and RUDKIN, J., dissent.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered March 14, 1910, dismissing an action for damages, upon withdrawing the case from the jury.  Affirmed.

*Boyle, Warburton & Brockway*, for appellants.

*Hudson & Holt*, for respondent.

MORRIS, J.—Appeal from a judgment of dismissal, in an action to recover damages for the alleged wrongful refusal to reinstate a life insurance policy, after forfeiture by non-payment of assessments and dues.  There is no dispute as to the facts; from which it appears, that on November 13, 1894, The Bankers' Life Association of St. Paul, Minnesota, which subsequently changed its corporate name to that of respondent, issued its policy of insurance upon the life of James J. Conway, in the sum of $2,000.  This policy was upon the cooperative assessment plan, providing for annual dues and mortuary assessments, according to the

[1] Reported in 112 Pac. 1106.

terms of the articles of incorporation, which by reference were made a part of the policy. In July, 1908, an assessment of $40 became due under the policy, which Conway received notice of but failed and neglected to pay, whereby his policy lapsed. On November 5, 1908, he applied for reinstatement, forwarding to the company the July assessment, with $7.50 dues and a certificate from Dr. Libbey that he was then in good health. On November 11, the company acknowledged the receipt of $47.50, and informed Conway that his certificate had lapsed, but that he might be reinstated upon furnishing satisfactory evidence of present good health; but that in order to procure such reinstatement, it would be necessary for him to be examined by Dr. Dewey, the medical examiner of the company at Tacoma, and such examination must disclose a satisfactory condition of health. In the same letter, Conway was informed the company would not accept the $47.50, and the same was returned. On November 17, Conway presented himself to Dr. Dewey for medical examination, and the doctor's certificate was mailed to the company. On December 11, Conway was informed by the company that his application for reinstatement was rejected.

The question now submitted is, Did Conway have such a legal right to reinstatement as can be enforced against the denial of such right by the company? It will readily be admitted, as stated in Cooley's Briefs on Insurance, at page 2395, that after a forfeiture of a life insurance policy because of nonpayment of assessments, "the right to reinstatement depends on the provisions of the contract. Since the right is not absolute, the insurer may impose such conditions as it sees fit, not contrary to public policy, on which reinstatement may be had (*Saerwein v. Jamon*, 65 N. Y. Supp. 501)." Upon the same page, the rule is also laid down that compliance with the conditions gives the delinquent an absolute right to reinstatement, if the provisions of the contract do not make the reinstatement optional with

the officers of the company. The provision of the contract in this instance is found in the articles of incorporation, and is as follows:

"Any person, having once been a member of this company, may be readmitted in the discretion of the officers of this association, upon his furnishing them satisfactory evidence that he is in good health, and upon his paying to said association all assessments due and other sums of money which he would have been called upon to pay to this association had he continued to be a member thereof."

Respondent contends—which was also the theory upon which the court below made its order of dismissal—that this provision destroys the absolute right to reinstatement, and makes such reinstatement optional with the officers of the company, in providing that readmission shall be in their discretion, and that the evidence of good health shall be such as is satisfactory to them. and that having so acted, such discretion is not reviewable in the courts; while appellants contend that the word "discretion," is to be construed in the sense of judicial discretion, and may be reviewed when it appears to have been arbitrarily exercised, as they claim here.

While it may be difficult to give satisfactory definition of the term "judicial discretion," because of the wide difference of authorities as to its nature, it may be said to be a discretion that is sound and guided by the fixed principles of law. 6 Ency. Plead. & Prac., 819. But even in cases calling for the exercise of such discretion, it will not be reviewed except for its manifest abuse. Such is, we believe, the universal rule. Where, however, discretion is vested in a nonjudicial body, such as trustees or officers of a corporation, or other public functionaries, its exercise does not call for the application of any fixed rules or principles of law, and its meaning cannot be so limited nor restricted; since to do so would be to take such a discretion away from the body upon which it is conferred and bestow it upon some other body, and so on *ad infinitum*, so long as the right of appeal or review existed. In the case

of *Judges v. People*, 18 Wend. 79, Senator Tracy, in his opinion, while not clear in his mind as to the proper meaning of a discretion that is governed by legal principles, finds no difficulty in defining a discretion that is not so controlled, and says, at page 99:

"It means, when applied to public functionaries, a power or right conferred upon them by law, of acting officially in certain circumstances, according to the dictates of their own judgment and conscience, uncontrolled by the judgment or conscience of others."

A like construction is adopted in *Brown v. State*, 109 Ala. 70, 20 South. 103, where, in reviewing the provisions of the statutes of Alabama in fixing the punishment for certain crimes by providing such punishment shall be, "at the discretion of the jury," the court says, at page 83:

"The words of the statute, *at their discretion*, are peculiarly significant and expressive of the freedom in the exercise of judgment, of the liberty of action and decision, entrusted, and exclusively entrusted, to the jury. The *discretion* they are to exercise, and exercise in obedience to their own consciences only, is the choice of election between the alternative punishments. The discretion is legal, in the sense that it is derived from and conferred by law. But it is not of the nature of judicial discretion, which is said to be controlled by fixed legal principles . . . It must have been foreseen and anticipated that there would be jurors reluctant to inflict capital punishment . . . that there would be some reluctant to convict on circumstantial evidence; and that not infrequently there would be some not so fully satisfied as others, that the evidence of guilt reached the standard the law prescribes. These are considerations which will influence the jury in choosing between the alternative punishments; a choice they must make according to the dictates of their own judgment and consciences, and which cannot be controlled or directed by the judgments or consciences of others."

We do not know the facts operating upon the minds of the officers of this company, inducing them to exercise their discretion against the reinstatement of this applicant, nor why

his evidence of good health was not satisfactory to them, except as we read the record and find therein facts which might have influenced them in arriving at the conclusion they did. In his first application for membership, Conway gave his age as about fifty years, and in response to an inquiry as to the extent of his use of ardent spirits, wine, or malt liquors, answered, "One glass a day." In his application for reinstatement, he gave the date of his birth as March 22, 1842, which would have made his age fifty-two years, seven months and nine days at the time of his first application. In both, he stated that his father and mother both died from unknown causes when he was a child. In response to an inquiry as to his use of liquors each day, he answered, "Malt liquors, two or three glasses; wine, none; spirits, two or three drinks." In his first application, the medical examiner rated him as a first class risk; in his application for reinstatement he was rated as a first class risk, "except for age and amount of stimulants taken."

Statements as to age and habit as to use of liquors are statements material to the risk, and while we do not hold, as a matter of law, that the discrepancies here noted would, in themselves, be sufficient to avoid the policy or to prevent reinstatement, if such question was purely one of law and properly submitted to us as such, we cannot say that they would not influence the sound judgment and good conscience of an officer of an insurance company in whom discretion is vested to pass upon such matters. Neither can we eliminate from this contract the fact that this medical examination upon application for reinstatement must disclose a condition of good health satisfactory, not to the applicant nor to the physician conducting the medical examination, but to the officers of this company in whom, by his contract, the applicant had placed the judgment and discretion to decide; a decision they must arrive at "according to the dictates of their own judgment and consciences, and which cannot be controlled or directed by the judgment or conscience of

others." To hold otherwise would be to destroy that element of individuality and personal judgment which must enter into any decision, and to substitute for the discretion and satisfaction of one body the discretion and satisfaction of other bodies, strangers to the contract and not within its contemplation, and making the contract read in effect that reinstatements may be had upon the applicant furnishing evidence of reasonably good health, instead of, as it does read, "in the discretion of the officers of this association, upon his furnishing them satisfactory evidence that he is in good health."

The nearest case in point we have found is *Graveson v. Cincinnati Life Association*, 6 Ohio Cir. Dec. 327, where the policy was forfeited on March 11 for failure to pay an assessment due March 1. In September following, the insured offered to pay all arrearages, and asked for reinstatement. The rules of the association provided for medical examiners whose duty it was to make all examinations, and who might accept or reject applications. The association having declared its willingness to reinstate the applicant upon his furnishing a satisfactory medical examination, he submitted to such examination, and as a result thereof, was rejected, the only reason given by the medical examiner being that the applicant's pulse was between 76 and 100. The court, in touching upon this feature of the case, says:

"This brings us to the only remaining question in the case, and that is as to the medical examination—was it satisfactory? In the first place to whom was it to be satisfactory? The constitution and by-laws provided that as to all applications it should be within the discretion of the medical director to accept or decline any application; but as to forfeiture, it provided that 'by furnishing a new and satisfactory application and medical examination,' one might be restored, saying nothing as to whom this examination should be satisfactory. We are of the opinion, however, that this examination must be satisfactory to the medical director. It certainly could not have been intended that the examination should only be satisfactory to the applicant, or to any one

whom he might select to make the examination. Why should the defendant require the performance of these conditions if they were not to be satisfactory to the defendant?"

This case was affirmed, without opinion, by the supreme court of Ohio in 56 Ohio St. 725.

We will discuss one other feature, and that is appellants' contention that the company waived its right to reject the application in accepting dues and assessments from him on a prior occasion, after the time fixed for their payment, and also in writing him that his right to reinstatement was conditioned upon his "furnishing satisfactory evidence of present good health." What we have said disposes of the latter contention, such satisfactory evidence of good health meaning satisfactory to the company, and giving it the right of rejection, if, in the exercise of this discretion vested in it, such evidence was not satisfactory. In support of the first feature of this contention, appellant testified that he knew the time for payment had passed, but thought he would be reinstated by showing he was in good health, "because it happened once before. I was behind once before in my delinquency, and had no trouble at all." This would not be sufficient to estop the company from now insisting upon the provisions of the contract. A party to a contract, who does not take immediate steps to forfeit it because of a default in payment does not thereby lose his right to insist upon a forfeiture for subsequent nonpayments. *Cash v. Meisenheimer*, 53 Wash. 576, 102 Pac. 429; *Garvey v. Barkley*, 56 Wash. 24, 104 Pac. 1108; *Walker v. McMurchie*, 61 Wash. 489, 112 Pac. 500.

This same contention was raised in *Graveson v. Cincinnati Life Ass'n, supra,* and it was there held that such a payment, being accepted by the secretary of the company (to whom the payments were also made in the case at bar), would not constitute a binding waiver, it not appearing that it was done with the knowledge and approval of the officers of the company in whom the power of forfeiture existed. Such is the

case here.  The secretary not having the right to forfeit, his unknown and unapproved act could not bind the company where the act of the company complained of is based, not alone on the failure to pay the assessment when due, but upon the failure to pass a satisfactory medical examination upon the application for reinstatement.

For these reasons, we are of the opinion that the judgment of dismissal was rightly entered, and the same is affirmed.

CHADWICK and CROW, JJ., concur.

DUNBAR, C. J., and RUDKIN J., dissent.