## EXCHANGE TRUST CO. v. CAPITOL LIFE INS. CO. OF COLORADO.

No. 589.

District Court, N. D. Oklahoma.

May 5, 1930.

Cutlip, Horsely & Lott, of Wewoka, Okl., and McGuire, Marshall & Bodovitz, of Tulsa, Okl., for plaintiff.

West, Gibson, Sherman, Davidson & Hull, of Tulsa, Okl., for defendant.

KENNAMER, District Judge.

There was no material conflict in the evidence offered on the trial of this cause. The following facts were established by the evidence: The defendant issued and delivered to J. Coody Johnson, the assured, a life insurance policy, No. 64552, on the 11th day of September, 1925, in the amount of $50,000, in consideration of a premium of $4,305.50, in which the estate of the assured was designated as beneficiary. The first annual premium was paid in full. On the due date of the second annual premium Johnson paid to the defendant the sum of $339 in cash, which cash payment constituted the usual premium for term insurance for $50,000 from September 11, 1926, to November 11, 1926, and executed his promissory note due November 11, 1926, in the amount of $3,970.50. The note contained the following provision: "If this note is not paid when due it is not to be considered as payment of premium, and the policy on account of which the note is given, will become forfeited and void, except as provided in said policy. If said policy becomes payable before this note falls due, the amount of the note, with interest, shall be deducted from the insurance." The note was never paid. The settlement for the second annual premium was made through the branch office of the defendant company at Oklahoma City, Okl., including the cash payment of $339, and by its agent forwarded to the home office of the defendant at Denver, Colo., for approval, which settlement was by the defendant approved. Johnson, the assured, was advised by letter dated August 27, 1926, from the Oklahoma City agent and branch office that such settlement would be subject to the approval of the home office. The policy contains the following provisions:

"A grace of thirty-one days (without interest charge) will be allowed for the payment of renewal premiums, during which period the policy will remain in force."

"This policy is based upon the payment of premiums annually in advance, but renewal premiums may be paid in semi-annual or quarterly installments in advance in accordance with the Company's table of rates applicable hereto. Premiums must be paid at the Home Office of the Company in Denver, Colorado, or to a designated collector, but in any case only in exchange for the Company's receipt therefor signed by the President, a Vice-President, Secretary, Treasurer, or Actuary, and countersigned by such collector. Failure to pay any premium when due shall cause this policy to cease and determine except as herein provided, and all payments made thereon shall remain the property of the Company."

"This policy may be reinstated (unless previously surrendered) at any time within five years after default in the payment of any premium, upon furnishing evidence of insurability satisfactory to the Company and the payment of all past due premiums with interest at 6% per annum and the payment or reinstatement with interest at a like rate of any indebtedness to the Company hereon."

"(1) Only the President, a Vice-President, Secretary, Treasurer or Actuary has power in behalf of the Company (and then only in writing) to make or modify this or any contract of insurance, or to extend the time for paying any premium, and the Company shall not be bound by any promise or representation heretofore or hereafter made by any agent or person other than the above."

The note was by the defendant company recalled from its Oklahoma City agent subsequent to December 11, 1926, and on January 12, 1927, an entry was made upon the records of the defendant company at Denver canceling the policy as lapsed for nonpayment of premium. Some time subsequent to December 11, 1926, Mrs. Smart, wife of Mr. Smart, who was the agent of the defendant company in charge of the Oklahoma City office, mailed the following notice to Johnson:

"Notice of Note

"The Capitol Life Insurance Company

"Home Office: Denver, Colorado

"The following described note, given in settlement of premium, will become due at

the Home Office of this Company. Kindly give its payment your prompt attention and favor us with remittance covering the same.

| Policy No. 64552 | Date Due Nov. 11-26 | Amount 3970.50 | Interest and Interest | Total |
|---|---|---|---|---|

"Will thank you to advise us your decision as to re-instatement of your policy per previous correspondence.

"J. Coody Johnson, 203 Seminole Ave. Wewoka, Ok.

"Bring this notice with you or attach to remittance."

This notice was mailed without knowledge or directions from the home office at Denver. On January 29, 1927, the defendant wrote a letter to the insured stating in substance that his policy had lapsed because of nonpayment of the premium note, requesting the insured to advise the company his reasons for permitting the policy to lapse, and suggesting that upon receipt of his reply he would be advised as to requirements for reinstatement. On January 30, 1927, Johnson replied to this letter, stating that he thought he had sent to the defendant $300 by draft, and had asked for an extension of time in which to pay the note; that shortly thereafter he took sick and had been confined to his house for all of the months of November and December, and had been recovering very slowly, and because of his illness he had not been able to do anything in the way of sending the balance of the money due on the note. On February 5, 1927, in reply to Johnson's letter, the company advised Johnson if he desired to reinstate his policy he would find inclosed a short form medicinal examination blank, which he was directed to take to his family physician and be examined, paying the examination fee of $2, and upon receipt and approval of the examination, together with settlement of the past-due note and interest, the matter of reinstatement of the policy would receive attention. He was advised, if inconvenient to make payment of the entire amount due, to forward remittance of $500 to apply on account, and the balance of the note would be renewed to April 11, 1927. Johnson, upon receipt of the defendant's letter of February 5, 1927, filled out the application for renewal of his policy, obtained examination certificate of his family physician, and transmitted the examination certificate of his family physician, together with draft for $500, in a letter to the defendant. The letter inclosing the application for re-

instatement and draft was under date of February 24, 1927. The letter and draft was received by the defendant company at its home office in Denver on February 26, 1927. On March 2, 1927, the defendant wrote to Johnson stating that the medicinal board of said company had requested that Johnson be examined by Dr. Walter L. Knight of Wewoka, Okl., medicinal examiner for said company at that place. Johnson had died on February 28, 1927. So far as the evidence discloses, the defendant company had no notice of Johnson's death on the date it mailed the letter requesting additional examination of Johnson before acting on his application for reinstatement of his policy. On the date of March 2, 1927, Mrs. Smart, cashier of the defendant's branch office at Oklahoma City, mailed a newspaper clipping regarding the death of Johnson, with a notation upon the clipping of the number of the policy in suit. The defendant mailed the $500 draft, addressed to Johnson to his home address in Wewoka, Okl., which was fourteen days subsequent to the notice of the death of Johnson. The only statement in the letter returning the draft was to the effect it was returned in the amount of $500. The draft had not been cashed by the defendant company. The company refused to pay the policy upon the ground that it had lapsed for nonpayment of premium, and this action was instituted.

Counsel for the plaintiff assert its right to recovery upon two theories: First, "written demand for the payment of the past due note operated as a waiver of the forfeiture occurring upon the non-payment of the premium note." Second, "the defendant's failure to act upon Johnson's application for reinstatement of the policy, which application was made in conformity with the terms of the defendant's proposal of February 5, 1927, coupled with retention of the $500.00 draft for twenty days after the same had been received, and for fourteen days after the defendant had been notified of Johnson's death, operated as an implied acceptance of the application for the reinstatement, or a waiver of the lapsing of the policy, and therefore effected a revival of the policy."

The rule stands established that a provision in a policy that it shall be void when premiums are not paid when due means only that it shall be voidable at the option of the company, and that such a stipulation or condition of the policy may be waived by the

company for whose benefit it was made. Grigsby v. Russell, 222 U. S. 149, 32 S. Ct. 58, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863; Knickerbocker Life Insurance Co. v. Norton, 96 U. S. 240, 24 L. Ed. 689. Where the insurance company holds a note to cover the unearned portion of a premium due upon a life insurance policy, which note provides that in default of payment the policy shall be terminated or become void, unconditionally demands payment of such note after maturity, the insurer must be held to have regarded the policy as in effect and to have waived its right to declare the policy forfeited or lapsed. New England Mut. L. Ins. Co. v. Springgate, 129 Ky. 627, 112 S. W. 681, 113 S. W. 824, 19 L. R. A. (N. S.) 227; Bankers Reserve Life Co. v. Rice, 99 Okl. 184, 226 P. 324; Faris v. American National Assur. Co., 44 Cal. App. 48, 185 P. 1035; Loftis v. Pacific Mutual Life Insurance Co., 38 Utah, 532, 114 P. 134; Denver Life Insurance Co. v. Crane, 19 Colo. 191, 73 P. 875; Galliher v. State Mutual Life Insurance Co., 150 Ala. 543, 43 So. 833, 124 Am. St. Rep. 83; Beatty v. Mutual Reserve Fund Life Association (C. C. A. 9), 75 F. 65.

The ground upon which this doctrine stands established is that the demand for the payment of the delinquent premium note, after maturity, is inconsistent with the position that the policy has lapsed for nonpayment of premium. The insurer could not insist upon a forfeiture and at the same time by its conduct treat the contract as still in force. The insurer, for whose benefit the forfeiture provision was made, has the unqualified right to waive such a stipulation and insist upon enforcement of the premium note for the unearned premium, and where the insurer has pursued such a course of conduct as to constitute a waiver of the forfeiture provision of the contract, and the reasonable deduction from the evidence is such as to imply a purpose not to insist upon a forfeiture, the insurer will be held liable.

 I am unable to find from the evidence in the case that the defendant made an unqualified demand upon the insured for the payment of the note due November 11, 1926. Counsel's contention for the plaintiff is that the unsigned notice introduced in evidence, which Mrs. Smart testified she mailed from the Oklahoma City office to the insured, constitutes an unqualified demand for the payment of the past-due premium note. With this contention I cannot agree. It is true

that the printed form of the notice requests attention and remittance, and if this was all the notice contained, and had been sent by an authorized agent with authority to extend time for payment of the note, the contention as made would be sound. The theory of counsel for the plaintiff ignores the typewritten part of the notice requesting the insured to advise the company of his decision "as to re-instatement of the policy per previous correspondence," clearly evidencing the intention of the sender of the notice to call Johnson's attention to the matter of reinstating his policy. It is a reasonable deduction from a consideration of the entire notice that the writer had in mind directing Johnson's attention to the amount of the note and the requisite payment to be made as one of the requirements for reinstatement of his policy. Moreover, the evidence is uncontradicted to the effect that, subsequent to the mailing of this notice, on January 29, 1927, Johnson was advised by letter from the home office of the nonpayment of the note, and that his policy had lapsed, to which letter Johnson replied by letter of January 30, 1927, advising the company he thought he had arrangements made to extend the time for payment of the note in that he had sent a payment of $300 and requesting the company to make any requirements which he could meet to have the policy reinstated. The company replied to this letter advising Johnson that no payment of $300 had been received, and suggesting the terms upon which he could reinstate his policy. On the date of the death of Johnson the matter of the reinstatement of his policy was under consideration, but had not been completed. Clearly, it cannot be reasonably concluded that the company waived its right to treat the policy as terminated for nonpayment of premium. It is well settled by the authorities that the basis of waiver is estoppel. Equitable Life Assurance Society v. McElroy (C. C. A.) 83 F. 631; Globe Mutual Life Insurance Co. v. Wolff, 95 U. S. 326, 333, 24 L. Ed. 387; Columbian Nat. Life Insurance Co. v. Morey et al. (C. C. A.) 26 F. (2d) 580.

 The doctrine of waiver is only applied by the courts in determining the liability on insurance contracts where the insurance company has done, omitted to do, some act whereby the assured has just ground to believe, does believe, and has acted on such belief, that the insurance company has continued its contract in force without the payment

of premium. See Equitable Life Assurance Society v. McElroy (C. C. A. 8), supra.

■ Under the terms of the policy involved, the insured had the right at any time within five years after default of the payment of premium, upon furnishing evidence of insurability satisfactory to the company and the payment of all past due premiums, with interest at 6 per cent. per annum, to reinstate his policy. This he undertook to do. According to his written statement made to the company by letter, he had been ill for several weeks with influenza. The health certificate furnished by his family physician did not satisfy the company of his insurability, and it was not an unreasonable request that he submit to a further medical examination by a physician selected by the company. The plaintiff introduced no evidence in the trial of the cause tending to establish the physical condition of the insured on the date of his application for reinstatement other than the certificate furnished by his family physician accompanying such application. The uncontroverted facts are that he had been ill with influenza and unable to be about his office, and within four days from the date he mailed his application for reinstatement, together with the certificate of his family physician, he had died. I am clearly of the opinion from a consideration of all the evidence that the insured was not in good health on the date he mailed the application for reinstatement. If he in fact was, it was within the power of the plaintiff to establish such fact.

In the case of Globe Mutual Life Insurance Co. v. Wolff, supra, the court said: "The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct and enforce the conditions. To a just application of this doctrine it is essential that the Company sought to be estopped from denying the waiver claimed should be apprised of all the facts; of those which create the forfeiture, and of those which will necessarily influence its judgment in consenting to waive it. The holder of the policy cannot be permitted to conceal from the Company an important fact, like that of the insured being in ex-tremis, and then to claim a waiver of the forfeiture created by the act which brought the insured to that condition."

To the same general effect are Ripy v. Cloverleaf Co. (C. C. A.) 9 F.(2d) 324; St. Paul Ins. Co. v. Ruddy (C. C. A.) 299 F. 189; Reynolds v. Detroit Co. (C. C. A.) 19 F.(2d) 110; United Firemen's Ins. Co. v. Thomas (C. C. A.) 82 F. 406, 47 L. R. A. 450; Williams v. Neely (C. C. A.) 134 F. 1, 69 L. R. A. 232.

■ The further contention of counsel for the plaintiff that Johnson's compliance with the terms of the proposal set out in defendant's letter of February 5, 1927, in reference to reinstatement of the policy, coupled with the retention of the part payment of the premium remitted to it by Johnson, constituted an implied acceptance of the application for reinstatement cannot be sustained. This contention is asserted upon the theory that it was the duty of the insurer to reject the medicinal examination made by Johnson's family physician, or approve it and reinstate the policy, and the failure of the company to reject the medicinal examiner's report within a reasonable time constituted an implied approval of reinstatement. I am unable to conclude that the request of the company for a further showing of insurability on the part of Johnson, in view of all the circumstances and facts in the case, was an unreasonable or arbitrary request on the part of the insurer. Courts have no right to control the discretion of the officers of the insurance company in refusing to reinstate a policy that has lapsed for nonpayment of premium, unless the inference arises from a consideration of the evidence that the company acted dishonestly and in bad faith. Lane v. Fidelity Mutual Life Insurance Co., 142 N. C. 55, 54 S. E. 854, 115 Am. St. Rep. 729; Conway v. Minnesota Mutual Life Insurance Co., 62 Wash. 49, 112 P. 1106, 40 L. R. A. (N. S.) 148; Rome Industrial Insurance Co. v. Eidson, 138 Ga. 592, 75 S. E. 657; International Life Insurance Co. v. Mowbray (C. C. A.) 22 F.(2d) 952.

■ The negotiations for the reinstatement of the policy were in progress on the date of the death of the insured, and there remained unfinished the matter of the insured furnishing satisfactory proof of his insurability, and of the insurer considering and passing upon such proof, and assenting to the reinstatement of the policy. The death of the insured suspended the proceedings.

It was essential to the reinstatement of the policy that the insured furnish to the insurer satisfactory proof of his insurability, and that the insurer, in the exercise of a sound discretion, pass upon the proof furnished, and assent to the reinstatement of the policy. The death of the insured having occurred prior to the time that the insurer had determined as to whether the insured had furnished the satisfactory proof required by the terms of the policy, it is obvious that the death of the insured rendered impossible the furnishing of such proof, and that the assent of the insurer to reinstatement not having been given during the lifetime of the insured, that there was no agreement of reinstatement. The death of the insured prior to reinstatement of the policy suspended the negotiations therefor, and, the policy of insurance not having been reinstated during the lifetime of the insured, there can be no recovery on the policy. Mactier v. Frith, 6 Wend. (N. Y.) 103, 21 Am. Dec. 262.

Judgment may be entered for the defendant.