[Civ. No. 11360. Second Appellate District, Division One.—January 24, 1938.]

JOSEPH B. GREENBERG, Appellant, v. THE CONTINENTAL CASUALTY COMPANY (a Corporation), Respondent.

Martin Gang and Robert E. Kopp for Appellant.

Joe Crider, Jr., and Clarence B. Runkle for Respondent.

DORAN, J.—Plaintiff appeals from a judgment in favor of defendant in an action for damages arising from the refusal of said defendant (sometimes referred to as "the company" or "respondent"), to reinstate a noncancellable policy of insurance. The policy in question was issued to plaintiff on April 11, 1924, and provided for payment of $250 per month in the event of accidental injury or sickness, and the sum of $25,000 in the event of accidental death. Plaintiff's original application for this insurance, filed with the company, certified, among other things, that his occupation was that of "Merchant and Auctioneer"; and that he was then in possession of a health and accident policy in another company providing for monthly payments up to $250, as well as three life insurance policies in other companies aggregating the sum of $12,000.

The policy contained the following provision relative to reinstatement: "22. After any default in payment of premium, this policy may be reinstated . . . on written application by the Insured to the General Office of the Company and the payment of the defaulted premium, provided the Insured shall submit with such application *evidence of insurability satisfactory to the Company.*" (Italics added.)

After the issuance of the policy in question, plaintiff paid all of his premiums within the proper time until the premium dated April 11, 1935, became due and payable. The check for this payment was not mailed by plaintiff until May 16, 1935, some three days after the expiration of the grace period. This check was returned, the company declaring that the policy had lapsed because of the delinquent payment. Several letters were exchanged between plaintiff and defendant, in one of which, by plaintiff, was enclosed an application for reinstatement together with tender of payment of the defaulted premium, and, also included, was an affidavit of proof by plaintiff's physician as to the insured's good health. The application for reinstatement indicated that at this time plaintiff's occupation was that of "Vice President of the 3-G Distillery Corp." and that he was in possession of health and accident policies in other companies providing for a total of $350 in monthly indemnities, and also policies aggregating the sum of $33,000, in the event of accidental death. Plaintiff testified that he was earning a salary at this time of $1,000 per month, and was receiving some $3,000

per year in addition to his salary, as dividends upon stock owned by him in the company of which he was an officer.

The application for reinstatement was rejected by the company, and in a letter to the plaintiff dated August 17, 1935, said company stated its grounds as follows:

"We have been considering Mr. Greenberg's reinstatement application, and notice he schedules approximately $350.00 of monthly indemnity in addition to our policy, which was for $250.00 monthly. We also notice that he has $33,000.00 accidental death indemnity on his life insurance policies.

"Our company is willing to reinstate, or consider issue of disability insurance up to fifty per-cent of an applicant's net earned income, but in no event beyond $500.00 combined monthly indemnity, which figure must include all companies and all lines of insurance. We also do not participate in over $25,000.00 accidental death indemnity, more than which is already carried by Mr. Greenberg, therefore, under our particular policy, we would not be willing to reinstate any principal sum indemnity, but we would be willing to reinstate enough of the monthly indemnity so that the total amount carried would not exceed $500.00 per month. This would require a reduction of $100.00 under our policy. If Mr. Greenberg is interested in that amount of indemnity, kindly write us further, and we will send him the necessary applications to do this, and will then state what other insurability requirements are needed."

The legal effect of the foregoing letter, regardless of the use therein of the word "reinstate", was, in fact and in law, a denial of plaintiff's application for the reinstatement of the policy, and at the same time a tentative offer to reinsure on different terms.

An action was filed by plaintiff for breach of contract to reinstate the original policy; upon trial thereof judgment was rendered in favor of defendant. It is from this judgment, as heretofore stated, plaintiff appeals.

Appellant contends in substance, first, that the phrase "evidence of insurability", as used in provision number 22 in the policy, hereinbefore quoted, relates only to matters concerning good health and its continuance, and does not include all of the factors which influence the determination of the question as to whether in the first instance a policy will be issued by the company; second, that the clause "evi-

dence of insurability satisfactory to the company" is ambiguous and uncertain. In connection with this last-mentioned contention, it is urged "that in the event of ambiguity a contract is to be interpreted most strongly against the parties who caused the uncertainty to exist (Civ. Code, sec. 1654)". That this is the law there can be no question, and, as pointed out by appellant in the following quotation, "The phraseology of contracts of insurance is that chosen by the insurer and the contract in fixed form is tendered to the prospective policy holder who is often without technical training, and who rarely accepts it with a lawyer at his elbow. So if its language is *reasonably open to two constructions,* that more favorable to the insured will be adopted (citing cases), and unless it is obvious that the words are intended to be used in their technical connotation they will be given the meaning that common speech imports . . . " (Italics added.) (*Aschenbrenner* v. *United States Fid. & G. Co.,* 292 U. S. 80 [54 Sup. Ct. 590, 78 L. Ed. 1137].)

There is authority, too, for appellant's contention first above mentioned, namely that "insurability" means "good health". (*Sussex* v. *Aetna Life Assur. Co.,* 33 Dominion Law Reports, 549, 38 Ontario, 365; *Missouri State Life Ins. Co.* v. *Hearne,* (Tex. Civ. App.,1920) 226 S. W. 789; *Illinois Bankers Life Assn. of Monmouth, Ill.,* v. *Palmer,* 176 Okl. 514 [56 Pac. (2d) 370]; *Illinois Bankers Life Assur. Co.* v. *Payne,* (Tex. Civ. App., 1936) 93 S. W. (2d) 576.)

As a third contention it is urged by appellant that "upon proof of good health by the insured the burden of proving a valid reason for dissatisfaction rests upon the Insurance Company"; and that the phrase "satisfactory to the company" does not give the company the right to arbitrarily reject the application for reinstatement.

Assuming that appellant's third contention is warranted by the record, it is, to some extent, supported by the following authority, among others: " 'Where the holder of a policy of life insurance has, by its terms, a vested contract right to reinstatement, conditioned only upon payment of arrears of premiums and advances made on the policy, with interest, and "upon evidence of insurability satisfactory to the company" (*Rome Industrial Ins. Co.* v. *Eidson,* 142 Ga. 253, 255 [82 S. E. 641]), such vested right cannot be impaired or limited by subsequent conditions contained in the application for reinstatement furnished by the insurer.' (*Winder Na-*

*tional Bank* v. *Aetna Life Ins. Co.*, 36 Ga. App. 703 [137 S. E. 848].) In the case of *Mutual Life Ins. Co. of N. Y.* v. *Lovejoy*, 203 Ala. 452 [83 So. 591], it is said: 'The clause of the contract to "reinstate" does not mean to reinsure under another and different contract; it implies the right of the insured to be placed in the same condition that he occupied before the forfeiture, and it implies the duty on the part of the insurer to place the insured in that condition, and it allows no right to exact other conditions, precedent or subsequent, to reinstatement. (Citing cases.)' The rights of the parties in this case were fixed by the contract of insurance." (*Illinois Bankers Life Assn. of Monmouth, Ill.,* v. *Palmer, supra.*)

It is urged, by way of argument in support of the foregoing contentions by appellant, that because a large sum has been paid over a period of years, as a premium on account of the contract in question, to attribute a broad meaning to the disputed phraseology would result in an unwarranted forfeiture of the accrued rights of the insured. It is altogether likely that the same subject was a topic of discussion in connection with the authorities relied upon by appellant, but from the standpoint of logic the argument is wholly beside the issue and without merit, unless sentiment or some other emotional influence is to be substituted for reason as the basis for whatever conclusion might be reached.

Before proceeding with a summary and disposition of the decisive questions involved it should be noted that there is respectable authority supporting an entirely different conclusion than that reached by the authorities upon which appellant relies. The Supreme Court of the State of Washington had occasion to pass upon the same question. There the court held: "The question now submitted is: Did Conway (plaintiff and appellant) have such a legal right to reinstatement as can be enforced against the denial of such right by the company. It will readily be admitted . . . that, after a forfeiture of a life insurance policy because of nonpayment of assessments, the right to reinstatement depends on the provisions of the contract. Since the right is not absolute, the insurer may impose such conditions as it sees fit, not contrary to public policy, on which reinstatement may be had. . . . The rule is also laid down that compliance with the conditions gives the delinquent an absolute right to reinstatement, *if the provisions of the contract do not make*

*the reinstatement optional with the officers of the company.*
The provision of the contract in this instance . . . is as follows: 'Any person, having once been a member of this company, may be readmitted in the discretion of the officers of this association, upon his furnishing them satisfactory evidence that he is in good health, and upon his paying to said association all assessments due . . . ' Respondent contends, which was also the theory upon which the court below made its order of dismissal, that this provision destroys the absolute right to reinstatement, and makes such reinstatement optional with the officers of the company in providing that readmission shall be in their discretion, and that the evidence of good health shall be such as is satisfactory to them, and, that having so acted, such discretion is not reviewable in the courts; while appellants contend that the word 'discretion' is to be construed in the sense of judicial discretion, and may be reviewed when it appears to have been arbitrarily exercised, as they claim here. While it may be difficult to give a satisfactory definition of the term 'judicial discretion' because of the wide difference of the authorities as to its nature, it may be said to be a discretion that is sound and guided by the fixed principles of law. (6 Encl. Pl. & Pr. 819.) But, even in cases calling for the exercise of such discretion, it will not be reviewed except for its manifest abuse. Such is, we believe, the universal rule. Where, however, discretion is vested in a nonjudicial body, such as trustees or officers of a corporation, or other public functionaries, its exercise does not call for the application of any fixed rules or principles of law, and its meaning cannot be so limited nor restricted, since to do so would be to take such a discretion away from the body upon which it is conferred and bestow it upon some other body and so on *ad infinitum,* so long as the right of appeal or review existed. . . . We do not know the facts operating upon the minds of the officers of this company, inducing them to exercise their discretion against the reinstatement of this applicant, nor why his evidence of good health was not satisfactory to them, except as we read the record and find therein facts which might have influenced them in arriving at the conclusion they did. . . . In his application for reinstatement he was rated as a first-class risk, 'except for age and amount of stimulants taken'. Statements as to age and habit as to use of liquors are statements material to the risk, and, while we do not hold as a matter

of law that the discrepancies here noted would in themselves be sufficient to avoid the policy or to prevent reinstatement, if such question was purely one of law and properly submitted to us as such, we cannot say that they would not influence the sound judgment and good conscience of an officer of an insurance company in whom discretion is vested to pass upon such matters. Neither can we eliminate from this contract the fact that this medical examination upon application for reinstatement must disclose a condition of good health satisfactory, not to the applicant nor to the physician conducting the medical examination, *but to the officers of this company in whom by his contract the applicant had placed the judgment and discretion to decide, a decision they must arrive at according to the dictates of their own judgment and consciences, and which cannot be controlled or directed by the judgment or conscience of others.* To hold otherwise would be to destroy that element of individuality and personal judgment which must enter into any decision, and to substitute for the discretion and satisfaction of one body the discretion and satisfaction of other bodies, strangers to the contract and not within its contemplation, and making the contract read in effect that reinstatements may be had upon the applicant furnishing evidence of reasonably good health, instead of, as it does read, 'in the discretion of the officers of this association, upon his furnishing them satisfactory evidence that he is in good health.' '' (Italic added.) (*Conway* v. *Minnesota Mut. Life Ins. Co.,* 62 Wash. 49 [112 Pac. 1106, 40 L. R. A. (N. S.) 148].)

Returning now to the subject of the decisive questions involved, they may be summed up as follows: first (as contended by appellant), that the phrase ''evidence of insurability'' is ambiguous and that such phrase should be held to mean ''evidence of good health''; second (as further contended by appellant), that the phrase ''satisfactory to the company'' is also uncertain and ambiguous, and should not be given a meaning that would permit the company to reject the application for reinstatement when, as conceded by respondent, good health was not denied.

No question of public policy or valid statutory regulation is involved. The law applicable to the disputed questions is solely the law of contracts, and in that connection it is elementary that parties to a contract are entitled to have the

agreement enforced according to its terms. When, of course, a contract is uncertain and ambiguous it becomes the duty of the court to determine, if possible, what is intended, but in the absence of such ambiguity and uncertainty, and when the contract is in all respects valid, the power of the court is limited to enforcing such contract according to its terms. In that connection it might be appropriately observed that, "It is competent for the parties to make whatever contracts they may please, so long as there is no fraud, or deception or infringement of law. Hence the fact that the bargain is a hard one will not deprive it of validity." (*Herbert* v. *Lankershim,* 9 Cal. (2d) 409 [71 Pac. (2d) 220].)

■ With regard to the first decisive question above mentioned, there is no merit to the claim that the word "insurability" is ambiguous, unless it be charged that the English language is hopelessly inadequate and insufficient to express human thoughts. Indeed, the word is so simple,—constructed as it is just as hundreds of other words are constructed,— that its derivation scarcely warrants attention. However, to remove any doubt that it is a simple English word, it might be worth while to note, by analysis, that it is composed of the verb "insure", the suffix "able", which converts the verb into an adjective, and the suffix "ity", which then converts the adjective into an abstract noun. The word *insure,* in Webster's New International Dictionary, second edition, is defined as, "to assure against a loss by a contingent event, on certain stipulated conditions, or at a given rate or premium; to give, take, or procure an insurance on or for; to enter into, or carry, a contract of insurance on". The definition of the adjective *insurable* is given as, "capable of being insured against loss, damage, death, etc.; proper to be insured; affording a sufficient ground for insurance". The addition of the suffix *ity,* converting the word insurable from an adjective to an abstract noun, is defined as, "quality or condition of being insurable". Thus it may be seen that a man who is insurable is one who is: capable of being insured; proper to be insured; or who affords a sufficient ground for insurance. His *insurability* would be determined by a consideration, in the abstract, of the facts known about him. The word is in general use, and has but one meaning which is in no sense technical. Neither by definition nor by rule can its meaning be restricted to signify only "good health".

The contracting parties must be assumed to know the English language, at least the common words, otherwise the courts would be continually called upon to define and interpret words, the definition and meaning of which can be found in every authoritative English dictionary. Because of the failure of the authorities relied upon by appellant to recognize this simple truth, namely, that the word "insurability" is not ambiguous, the reasoning followed in such cases is logically unsound. To assume, as those authorities do assume, that the word is ambiguous is to adopt a false premise, and, from the standpoint of logic, to proceed with argument from a false premise can lead to but one conclusion, namely, a conclusion that is logically unsound. The Conway case, *supra*, avoids this error, as a result of which the reasoning is logical and the conclusion is, therefore, sound.

■ The second decisive question above mentioned, namely, that, as contended by appellant, the phrase "satisfactory to the company" is also ambiguous and uncertain, is subject to the same reasoning. How could the contracting parties have reduced their agreement to simpler language, and what words could have expressed more clearly what is intended? Conceding, but only for the purpose of analysis, that the meaning of the word "insurability" is uncertain, nevertheless the contracting parties agreed, as the memorandum of their agreement clearly and unequivocally reveals, that the evidence of such "insurability" must be "satisfactory to the company". By agreement of the parties to the contract the right and responsibility of determining the question as to whether the "evidence of insurability" was satisfactory, was imposed upon and vested in one of the parties to the agreement.

As heretofore noted, it is urged by appellant that the phrase "satisfactory to the company" does not give the company the right to arbitrarily reject the application for reinstatement. As to what is "arbitrary" is a matter of opinion. For the court to take the position that certain action by a party to the contract is arbitrary, would be the equivalent of determining what is "satisfactory evidence" of insurability. The contract in question clearly provides, as above stated, that what shall constitute "satisfactory evidence" is a question for the company to determine. It is purely a private matter addressed to the discretion of those officers of the company charged with the responsibility of

determining such question, and is in no sense that judicial discretion which appellate courts have the authority to review. In the final analysis, whatever the word "insurability" means, the contract provides that the evidence thereof must be "satisfactory to the company". That question having been determined by virtue of and according to the clear and unequivocal terms of the agreement, there is nothing, under the circumstances presented herein, for judicial determination.

Appellant's argument that the doctrine of estoppel applies, is without merit. In that connection it should be noted that the denial of the application for reinstatement terminated the contract. The tentative offer to insure, which was made by the company thereafter, was a new offer which the company had the right to make on its own terms. It was not an offer to reinstate the lapsed policy, with added and different conditions. The insured had the privilege of accepting or rejecting the offer and cannot be heard to complain because such offer was not the same as the offer upon which the original policy was based.

It is unnecessary to review the findings of fact and conclusions of law of the trial court. The denial by the company of appellant's application for reinstatement, under the circumstances presented by the record, gave rise to no cause of action. An objection to the introduction of testimony on the grounds that the complaint did not state a cause of action could have been properly sustained.

By whatever process the conclusion of the trial court was reached, the judgment that followed was in all respects correct, and it therefore should be, and is, affirmed.

York, P. J., and White, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 25, 1938. Seawell, J., and Curtis, J., voted for a hearing.